## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Jawad Jabbar Sadkhan** <br>     **Detainee,** <br>     **Guantanamo Bay Naval Station** <br>     **Guantanamo Bay, Cuba;** <br><br> *Petitioner/Plaintiff*, <br><br><br> v. <br><br><br><br> **GEORGE W. BUSH,** <br>     **President of the United States** <br>     **The White House** <br>     **1600 Pennsylvania Ave., N.W.** <br>     **Washington, D.C. 20500;** <br><br> **DONALD RUMSFELD,** <br>     **Secretary, United States** <br>     **Department of Defense** <br>     **1000 Defense Pentagon** <br>     **Washington, D.C. 20301-1000;** <br><br> **ARMY BRIG. GEN. JAY HOOD,** <br>     **Commander, Joint Task Force - GTMO** <br>     **JTF-GTMO** <br>     **APO AE 09360; and** <br><br> **ARMY COL. MIKE BUMGARNER,** <br>     **Commander, Joint Detention** <br>     **Operations Group, JTF - GTMO** <br>     **JTF-GTMO** <br>     **APO AE 09360,** <br><br> *Respondents/Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **FIRST AMENDED** <br> **PETITION FOR WRIT** <br> **OF HABEAS CORPUS** <br> **AND COMPLAINT FOR** <br> **DECLARATORY AND** <br> **INJUNCTIVE RELIEF** <br><br> **No. 05-CV-1487 (RMC)** |

**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS
AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Petitioner Jawad Jabbar Sadkhan seeks the Great Writ.  A citizen of Iraq, he acts on his own behalf.  He is a civilian wrongly classified as an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at the United States Naval Station in Guantánamo Bay, Cuba ("Guantánamo").  His detention is without lawful basis, without charge, and without access to counsel or any fair process by which he might challenge his detention.  Petitioner is being held under color and authority of the executive, and in violation of the constitution, laws and treaties of the United States as well as in violation of customary international law.  Accordingly, this Court should issue a writ of habeas corpus compelling respondents either to release petitioner or to establish in this Court a lawful basis for his detention.  This Court should also order injunctive and declaratory relief.

## I. JURISDICTION

1.    Petitioner brings this action under 28 U.S.C. §§ 2241(a), (c)(1) and (c)(3) and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of and the Fifth, Sixth, and Eighth Amendments to the United States Constitution. Because he seeks declaratory relief, petitioner also relies on Fed. R. Civ. P. 57.

2.    This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II. PARTIES

3.    Petitioner Jawad Jabbar Sadkhan is an Iraqi citizen who is presently incarcerated and held in respondents' unlawful custody and control at Guantánamo.

4.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  Petitioner is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of 13 November 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (13 November 2001) ("Executive Order").  President Bush is responsible for petitioner's unlawful detention and is sued in his official capacity.

5.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war or, alternatively, pursuant to the Executive Order, Secretary Rumsfeld has been charged with maintaining the custody and control of petitioner.  He is sued in his official capacity.

6.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay.  He has supervisory responsibility for petitioner and is sued in his official capacity.

7.    Respondent Army Colonel Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where petitioner is presently held.  He is the immediate custodian responsible for petitioner's detention and is sued in his official capacity.

8.    Respondents are directly responsible for any activities undertaken by or under the

supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to respondents' actions include activities performed by respondents' agents or employees, other government agents or employees or contractor employees.

### III.  STATEMENT OF FACTS

9.    Petitioner Jawad Jabbar Sadkhan is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

10.   Petitioner seeks to enforce his right to a judicial determination of the lawfulness of his detention.

11.   Petitioner is not, nor has he ever been an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 542 U.S. __, slip op. at 8-9 (28 June 2004).

12.   Petitioner seeks to enforce his right to a judicial determination by an appropriate and lawful authority as to whether there is a lawful and factual basis for respondents' determination that he is either an "enemy combatant" as defined by the Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

13.   At the time of his seizure and detention on 3 January 2002, petitioner was not a member of the Taliban Government's armed forces or Al Qaeda. Prior to his detention, he did not commit any violent act against any American person or property. He had no involvement,

direct or indirect, in the terrorist attacks on the United States on 11 September 2001, the ensuing armed conflict, or any act of international terrorism attributed by the United States to Al Qaeda. He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

14. Petitioner has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

15. Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

**The Joint Resolution**

16. In the wake of the 11 September 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On 18 September 2001, a joint resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (18 September 2001) ("Joint Resolution").

17. As petitioner did not participate in the armed conflict at any point in time, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or the Joint Resolution.

**The Executive Order**

18.    On 13 November 2001 President Bush issued an executive order authorizing Secretary

Rumsfeld to detain indefinitely anyone respondent Bush has "reason to believe":

i.      is or was a member of the organization known as al Qaeda;
ii.     has engaged in, aided or abetted, or conspired to commit, acts of international
        terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have
        as their aim to cause, injury to or adverse effects on the United States, its citizens,
        national security, foreign policy, or economy; or
iii.    has knowingly harbored one or more individuals described in subparagraphs (i) and
        (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (13 November 2001)("Executive Order").

President Bush must make this determination in writing.  The Executive Order was neither

authorized nor directed by Congress, and is beyond the scope of the Joint Resolution.

19.    The Executive Order purports to vest President Bush with the sole discretion to identify

individuals who fall within its purview.  It establishes no standards governing the exercise

of his discretion.  Once a person has been detained, the Executive Order contains no

provision for that person to be notified of the charges he may face.  The Executive Order

authorizes detainees to be confined indefinitely without charges.  It contains no provision

for a detainee to be notified of his rights under domestic and international law, and provides

neither the right to counsel, nor rights to notice of consular protection or to consular access

at the detainee's request.  It provides no right to appear before a neutral tribunal to review

the basis for or the legality of a detainee's continued detention and contains no provision for

recourse to an Article III court.  In fact the Executive Order expressly bars review by any

court.  The Executive Order authorizes indefinite and unreviewable detention, based on

nothing more than President Bush's written determination that an individual is subject to its

6

terms.

20.  The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate petitioner was made by respondents in the United States and in this judicial district, the decision to detain petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining petitioner was and is being made by respondents in the United States and in this judicial district.

21.  President Bush has never certified or determined in any manner, in writing or otherwise, that petitioner is subject to the Executive Order.

22.  Petitioner is not properly subject to the Executive Order.

23.  Petitioner has not been and is not being detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or the laws and usages of war in that petitioner has been denied the process due to him under the common law and the Due Process Clause of the Fifth Amendment to the Constitution of the United States, domestic civil and military law and international law.

**Guantánamo Bay Naval Station**

24.  On or about 11 January 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba.  In April 2002 prisoners were transferred to Camp Delta, a more permanent prison facility at Guantánamo.  Currently, some prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25.  Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts.  *See Rasul v. Bush*, 542 U.S. __, 124 S.Ct. 2686, 2698 (28 June 2004).

26.  Shortly after 3 January 2002, on a date known to respondents, the United States military

transferred petitioner to Guantánamo, where he has been held ever since, in the custody and control of respondents.

### The Conditions of Detention at Guantánamo

27.    Since gaining control of petitioner, the United States military has held him virtually *incommunicado.*

28.    On information and belief, petitioner has been or will be interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges. He has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees or customary international law. Indeed, respondents have taken the position that petitioner should not be informed of these rights. As a result petitioner lacks any ability to protect or to vindicate his rights under domestic and international law.

29.    Upon information and belief, petitioner has been forced to provide involuntary statements to respondents' agents at Guantanamo.

30.    Upon information and belief, petitioner has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See*, *e.g.*, United Nations Press Release, "United Nations Human Rights Experts Express Continued Concern About Situation of

Guantánamo Bay Detainees," 4 February 2005; International Committee of the Red Cross, Press Release, "The ICRC's Work at Guantánamo Bay," 30 November 2004; International Committee of the Red Cross, Operational Update, "US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC," 26 July 2004; Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the "War on Terror"*, at 22 (27 October 2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, November 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (27 November 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (4 April 2003).[1]

31.    In a confidential report to the United States government, the ICRC charged the U.S. military

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay*, 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23 july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Assoc. Press, 4 November 2004.

with intentional use during interrogations of psychological and physical coercion on prisoners at Guantánamo that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in Guantánamo," *New York Times*, 30 November 2004, at A1. The report includes claims that doctors and other medical workers at Guantánamo participated in planning for interrogations. *Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, "When Doctors Go to War," *New England Journal of Medicine*, 6 January 2005, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly aggressive interrogation techniques" including 24-plus hour interrogations involving temperature extremes, dogs, prolonged isolation, and loud music. *See Guantánamo: An Icon of Lawlessness,* Amnesty International, 6 January 2005, at 3-5; *see also* Neil A. Lewis, "Fresh Details Emerge on Harsh Methods at Guantánamo," *New York Times*, 1 January 2005, at A11; Carol D. Leonnig, "Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos," *Washington Post*, 26 December 2004, at A1; Neil A. Lewis and David Johnston, "New F.B.I. Memos Describe Abuses of Iraq Inmates," *New York Times*, 21 December 2004, at A1; Dan Eggen and R. Jeffrey Smith, "FBI Agents Allege Abuse of Detainees at Guantánamo Bay," *Washington Post*, 21 December 2004, at A1; Neil A. Lewis, "F.B.I. Memos Criticized Practices at Guantánamo," *New York Times*, 7 December 2004, at A19. Even more recently, the Associated Press has reported allegations that female Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood on a detainee's face, to try to break Muslim detainees. Associated Press, *Gitmo Soldier Details Sexual Tactics*, 27 January 2005.

32.     The unlawful and unconstitutional interrogation techniques used by respondents at

10

Guantánamo include not only physical and psychological abuse but also other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hannel, "Lawyers Describe Guantánamo Detainees," *Seattle Post-Intelligencer*, 19 January 2005.

33.     Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush.  Eric Lichtblau, "Gonzales Says '02 Policy on Detainees Doesn't Bind CIA," *New York Times*, 19 January 2005, at A17; Dan Eggen and Charles Babington, "Torture by U.S. Personnel Illegal, Gonzales Tells Senate," *Washington Post*, 18 January 2005, at A4.

34.     In published statements President Bush and Secretary Rumsfeld, and predecessors of Hood and Bumgarner, respectively Lenhert and Carrico, have proclaimed that the United States may hold the detainees under their current conditions indefinitely.  See, e.g., Roland Watson, *The Times* (London), 18 January 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base.  He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Assoc. Press, 22 January 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . .  'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN.  Lehnert said plans are to build a more permanent prison 'exactly in

11

accordance with federal prison standards . . . ."); John Mintz, "Extended Detention in Cuba Mulled," *The Washington Post*, 13 February 2002. ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

35.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantanamo indefinitely. *See* Department of Defense Press Background Briefing of 3 July 2003, at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html.

36.    Counsel for respondents have also consistently maintained that the United States may hold the detained petitioners under their current conditions indefinitely. *In re Guantánamo Detainee Cases*, Nos. 02-CV-0299 (CKK), *et al.*, (D.D.C.), Tr. of 1 December 2004 oral argument on motion to dismiss at 22-24, statements of Principle Deputy Associate Att'y Gen. Brian Boyle; *see also* Dana Priest, "Long-Term Plan Sought for Terror Suspects," *Wash. Post*, 2 January 2005, at A1.  Moreover, the government has acknowledged plans to begin constructing a new, more permanent facility at Guantánamo.  Christopher Cooper, "In Guantánamo, Prisoners Languish in a Sea of Red Tape," *Wall Street Journal*, 26 January 2005, at A1; Associated Press, "Guantánamo Takes on the Look of Permanency," 9 January 2005.

**Rendition**

37.    During interrogations detainees have also been threatened with rendition or transfer to countries that permit indefinite detention without charge or trial and/or routinely practice torture.  Upon information and belief, the United States has secretly transferred detainees to

such countries without complying with the applicable legal requirements for extradition. This practice, known as "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, 14 February 2005, at 106.

38.    The U.S. government's practice of extraordinary rendition has been well documented by major American and international news organizations, including, the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC").  According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash. Post*, 11 March 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects," *Wash. Post*, 2 January 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . ., that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

39.    Upon information and belief, petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

## IV.  CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

40.    Petitioner incorporates by reference all preceding paragraph.

41.    Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well as the Due Process Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals including petitioner Jawad Jabbar Sadkhan, without due process of law, and the remaining respondents have implemented those orders. Respondents' actions deny petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice,  Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

42.    To the extent that petitioner's detention purports to be authorized by the Executive Order, that order violates the Fifth Amendment on its face and as applied to petitioner.

43.    Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

14

## SECOND CLAIM FOR RELIEF
## (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

44.    Petitioner incorporates by reference all preceding paragraphs.

45.    Respondents, acting under color of law, have violated and continue to violate the right of petitioner Jawad Jabbar Sadkhan to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

46.    Accordingly, petitioner is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
## (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

47.    Petitioner incorporates by reference all preceding paragraphs.

48.    By the actions described above, respondents, acting under color of law, have denied and continue to deny petitioner Jawad Jabbar Sadkhan the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

49.    Violations of the Geneva Conventions are direct treaty violations and are also violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

50.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

51.    Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief as well as any

other relief the court may deem appropriate.

## FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

52.    Petitioner incorporates by reference all preceding paragraphs.

53.    Respondents have denied and continue to deny Petitioner Jawad Jabbar Sadkhan the process due to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

54.    Because respondents are detaining petitioner "under or by color of the authority of the United States" and "in violation of the Constitution or laws or treaties of the United States," petitioner's claim arises under 28 U.S.C.§ 2241, and he is entitled to habeas relief.

55.    Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

56.    Petitioner incorporates by reference all preceding paragraphs.

57.    Respondents directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon petitioner Jawad Jabbar Sadkhan in order to obtain coerced information or confessions from him, punish or intimidate him or for other purposes. Among other abuses petitioner has been held in and surrounded by conditions of isolation; constant vulnerability to repeated interrogation and severe beatings; the threat or reality of

16

being kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement or the threat of solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

58.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violate customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against petitioner.

60.    Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF<br>(ALIEN TORT STATUTE - WAR CRIMES)

Petitioner incorporates by reference all preceding paragraphs.

61.

62.    Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of petitioner Jawad Jabbar Sadkhan constitute war crimes and/or crimes against humanity in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and

II of the Geneva Conventions as well as customary international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

63.     As a result of respondents' unlawful conduct, petitioner Jawad Jabbar Sadkhan has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
CRUEL, INHUMAN OR DEGRADING TREATMENT)

64.     Petitioner incorporates by reference all preceding paragraphs.

65.     The acts described herein had the intent and the effect of grossly humiliating and debasing petitioner Jawad Jabbar Sadkhan, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

66.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

67.     Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of petitioner.

68.     Petitioner was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief as well as other relief to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE -
### ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

69.    Petitioner incorporates by reference all preceding paragraphs.

70.    The acts described herein constitute arbitrary arrest and detention of petitioner Jawad Jabbar

Sadkhan in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350,

in that the acts violated customary international law prohibiting arbitrary detention as

reflected, expressed, and defined in multilateral treaties and other international instruments,

international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified,

and/or conspired together and with others to bring about the arbitrary arrest and prolonged

arbitrary detention of petitioner in violation of the law of nations under the Alien Tort

Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting

arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in

multilateral treaties and other international instruments, international and domestic judicial

decisions, and other authorities.

72.    As a result of respondents' unlawful conduct, petitioner has been and is being deprived of

his freedom, separated from his family, and forced to suffer severe physical and mental

abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other

relief as the court may deem appropriate.

### NINTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - ENFORCED DISAPPEARANCE)

73.    Petitioner incorporates by reference all preceding paragraphs.

74.    Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the

enforced disappearance of petitioner Jawad Jabbar Sadkhan in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts described above violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    As a result of respondents' unlawful conduct, petitioner has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory and injunctive relief and such other relief as the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION -
UNLAWFUL DETENTION)

76.    Petitioner incorporates by reference all preceding paragraphs.

77.    Petitioner Jawad Jabbar Sadkhan is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

78.    President Bush has exceeded and continues to exceed the executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize petitioner and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of petitioner.

79.   The military seizure and detention of petitioner by the respondents is *ultra vires* and illegal because it is in violation of Article II of the United States Constitution.  To the extent that the executive asserts that petitioner's detention is authorized by the Executive Order, that order exceeds the executive's authority under Article II and is *ultra vires* and void on its face and as applied to petitioner.

80.   To the extent that respondents assert that their authority to detain petitioner derives from a source other than the Executive Order, including without limitation the executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, respondents lack that authority as a matter of fact and law.

81.   Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### ELEVENTH CLAIM FOR RELIEF
### (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

82.   Petitioner incorporates by reference all preceding paragraphs.

83.   Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States.  *See*, *e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

84.   By arbitrarily and capriciously detaining petitioner Jawad Jabbar Sadkhan in military custody for over three years in the manner described above, respondents have acted and

continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

85.     Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS
DENIAL OF DUE PROCESS)

86.     Petitioner incorporates by reference all preceding paragraphs.

87.     Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny petitioner Jawad Jabbar Sadkhan the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88.     Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - TORTURE AND CRUEL, INHUMAN
OR DEGRADING TREATMENT)

89.     Petitioner incorporates by reference all preceding paragraphs.

90.     Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject petitioner Jawad Jabbar Sadkhan to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.     Accordingly, petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

22

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

92.    Petitioner incorporates by reference all preceding paragraphs.

93.    Respondents, purportedly acting from a concern for national security, consistently have
contrived to intrude upon petitioner Jawad Jabbar Sadkhan's right to consult with counsel
by conditioning counsel's access to petitioner on unreasonable terms, including
classification/declassification procedures, all in violation of petitioner's attorney-client
privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S.
Constitution.

94.    Accordingly, petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any
other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

95.    Petitioner incorporates by reference all preceding paragraphs.

96.    Upon information and belief, petitioner Jawad Jabbar Sadkhan is at risk of being rendered,
expelled or returned without lawful procedures to a country that engages in torture.  The
transfer of the petitioner to a country that creates a foreseeable and direct risk that he will
be subjected to torture constitutes a violation of his rights under the Due Process Clause of
the Fifth Amendment to the United States Constitution and common law.

97.    Accordingly, petitioner is entitled to declaratory and injunctive relief, as well as any other
relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

98.    Petitioner incorporates by reference all preceding paragraphs.

99.     Upon information and belief, petitioner Jawad Jabbar Sadkhan is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of his rights under the Covenant Against Torture and the 1954 Convention Relating to the Status of Refugees, 19 U.S.T. 6259, 189 U.N.T.S. 150 *entered into force* 22 April 1954.

100.    Accordingly, petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

101.    Petitioner incorporates by reference all preceding paragraphs.

102.    Upon information and belief, petitioner Jawad Jabbar Sadkhan is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under customary international law, which may be vindicated under the Alien Tort Statute.

103.    Accordingly, petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, petitioner Jawad Jabbar Sadkhan prays for relief as follows:

1.      Grant the writ of habeas corpus and order respondents to release him from his current unlawful detention;

2.      Order that he be brought before the Court or before a magistrate judge assigned by the Court

24

at a convenient facility to conduct proceedings under the supervision of the Court to vindicate his rights;

3.  Order that he cannot be transferred to any other country without the specific, written agreement of him and his counsel while this action is pending;

4.  Order that he cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

5.  Order respondents to allow counsel to meet and confer with him in private and unmonitored attorney-client conversations;

6.  Order respondents to cease all interrogations of him, direct or indirect, while this litigation is pending;

7.  Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of him;

8.  Order and declare the Executive Order is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

9.  Order and declare that the prolonged, indefinite, and restrictive detention of him without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

10. Grant such other relief as the Court may deem necessary and appropriate to protect his rights under the common law, the United States Constitution, federal statutory law and

international law.


Dated:    17 October 2005                    Respectfully submitted,

                                             Counsel for petitioner:

                                             s/William A. Wertheimer, Jr.
                                             William A. Wertheimer, Jr. (P26275)
                                             30515 Timberbrook Lane
                                             Bingham Farms, MI 48025
                                             Tel: (248) 644-9200
                                             Fax: (248) 593-5128


                                             Of Counsel:
                                             Barbara Olshansky (NY0057)
                                             CENTER FOR CONSTITUTIONAL RIGHTS
                                             666 Broadway, 7th Floor
                                             New York, New York 10012
                                             Tel: (212) 614-6439
                                             Fax: (212) 614-6499


## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing petitioner without compensation.


Dated: 17 October 2005                   s/William A. Wertheimer, Jr.
                                         William A. Wertheimer, Jr. (P26275)
                                         30515 Timberbrook Lane
                                         Bingham Farms, MI 48025
                                         Tel: (248) 644-9200
                                         Fax: (248) 593-5128

## CERTIFICATE OF SERVICE

I, William A. Wertheimer, Jr., hereby certify that on 17 October 2005, I caused to be served via the e-filing system a copy of the first amended petition for writ of habeas corpus on the following counsel for record for respondents:

Preeya M. Noronha
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue NW, Room 7226
Washington, D.C.  20530
(202) 514-3338


Signature:      s/William A. Wertheimer, Jr.