IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAWAD JABBAR SADKHAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1487 (RMC) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | **ORAL ARGUMENT REQUESTED** |
| *et al.*, ) | |
| ) | |
| Respondents. ) | |

**PETITIONER'S BRIEF IN OPPOSITION TO
RESPONDENTS' AMENDED MOTION TO STAY PROCEEDINGS**

**Procedural Background**

On 23 August 2005 the undersigned filed a petition for writ of habeas corpus on behalf of Jawad Jabbar Sadkhan through his next friend father, Jabbar Sadkhan Al-Sahlani, Case No. 05-1679. Unbeknownst to the undersigned on 28 July 2005 Jawad Jabbar Sadkhan had filed the above-captioned matter *pro se*. On 10 August 2005 the government moved to stay proceedings in this matter. On 6 September 2005 the government filed a notice of multiple petitions in this matter and in Case No. 05-1679. On 19 September 2005 the undersigned filed a notice of dismissal in Case No. 05-1679 and entered a notice of appearance in this matter. On 18 October 2005 Sadkhan through the undersigned filed a first amended habeas petition. Later the same day, the government filed an amended motion to stay proceedings. Sadkhan here responds to that motion.

**The Protective Order**

The government does not object to the entry of the protective orders previously entered in

other Guantanamo detainee cases and has attached same to its motion as Exhibits A through C. Sadkhan agrees that this Court should enter these orders in this case at this time. This would allow the undersigned to send legal mail to Sadkhan and visit him at Guantanamo, upon compliance with the terms and procedures outlined in the orders.

## The Stay

The government seeks a stay of all proceedings pending the resolution of all appeals in *In re Guantanamo Bay Detainee Cases,* 355 F.Supp.2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. 10 March 2005) and *Khalid v. Bush,* 355 F.Supp.2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. 2 March 2005). The government argues that because the "core issues" in this case are at issue in these appeals: "[I]t makes no sense for these cases to proceed in advance of resolution of the appeals; further proceedings would require the expenditure of judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated when the Court of Appeals provides guidance regarding handling of the claims in these Guantanamo Bay detainee cases." Government's amended motion, pages 1-2.

A party seeking a stay of judicial proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis v. North American*, 299 U.S. 248, 255 (1936). Accord, *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971). Thus "in deciding to stay proceedings indefinitely, a trial court must first identify a pressing need for the stay" and "then balance interests favoring a stay against interests frustrated by the action." *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997). See also *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2nd Cir. 1971) ("The right to proceed in court should not be denied except under

the most extreme circumstances.").

Here the government has made no showing of hardship – it argues at page 10 of its motion only that it would be a burden to engage in "extensive discovery and factual development," a burden every litigant shares in every serious case. And the granting of a stay prejudices petitioner. Any balancing of harms must begin with the recognition that Sadkhan has been incarcerated virtually incommunicado for over three years without charge, access to counsel or any meaningful due process protections. Further, the government has recently released military and other federal agency documents confirming reports from released detainees and news organizations that Guantanamo detainees have been subject to systematic physical and mental abuse that can only be described as torture. These documents were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. See *American Civil Liberties Union v. Department of Defense*, No. 04-CV-4151 (AKH) (S.D.N.Y.). The documents can be viewed at http://action.aclu.org/torturefoia/.

Moreover, to grant a stay would ignore the Supreme Court's mandate to "consider in the first instance the merits of petitioners' claims." *Rasul v. Bush,* 124 S. Ct. 2686, 2699 (2004). It also would be wholly inconsistent with a long line of cases emphasizing that habeas cases must be handled expeditiously. *Preiser v. Rodriguez*, 411 U.S. 475, 496 (1973) ("the federal habeas statute provides for a swift, flexible, and summary determination."); *Carafas v. LaValle*, 391 U.S. 234, 238 (1968) (habeas review is designed "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); *Stack v. Boyle*, 342 U.S. 1, 4 (1952) ("Relief in this type of case must be speeding if it is to be effective.").

Nor is there any practical reason to wait for the decision of the court of appeals. In *Rasul* the Supreme Court held that federal district courts have jurisdiction to hear the habeas corpus claims of

Guantanamo detainees, noting that their allegations " unquestionably describe custody in violation of the Constitution or laws or treaties of the United States." 124 S. Ct. at 2698, note 15 (internal quotations omitted). The government's contention on appeal that the detainees have no rights whatsoever will not succeed.

Sadkhan recognizes that several judges of this Court have stayed proceedings in the cases pending before them. Government's amended motion, page 7, note 6. With all due respect, the fact that these judges have taken the easy way out in a controversial matter does not make it right.

### The Duration of Any Stay

At the very least this Court should limit the duration of any stay order until the court of appeals decides the pending appeals and no longer. When the detainees prevail, the government will have 90 days to petition for a writ of certiorari and there is no time limit on the Supreme Court's consideration of such a petition. At the earliest the Supreme Court would consider the cases during the October 2006 term. Even assuming expedited briefing and consideration, the Supreme Court would not likely issue a decision until sometime in 2007. In the meantime Sadkhan will have entered his fifth year of illegal detention. In *Landis* the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the conditions of Sadkhan's years of incarceration and its potentially indefinite duration, it is difficult to conceive of a delay more immoderate or consequences more oppressive than to require him to wait at least another full year to proceed with his petition. In *Landis* the Supreme Court vacated a stay in a securities case intended to last through intermediate and Supreme Court appeals, holding that "relief so drastic and unusual overpasses the limits of any reasonable need... ." 299 U.S. at 257. See also *Dellinger*, 442 F.2d at 785-88.

**Factual Returns**

The government has agreed that the undersigned should have access to his client at Guantanamo to prepare his case. Government's amended motion, page 2. In order for that access to be meaningful, this Court should require the government to make a factual return as a condition to granting any stay.[1]

The government has already organized the facts behind the charges. It has conducted factual hearings of a rudimentary nature in the Combat Status Review Tribunals (CSRT). As a result of a successful Associated Press Freedom of Information Act case, a sampling of unclassified CSRT files for about 60 detainees can be viewed at http://wid.ap.org/documents/detainees/list.html. (The files typically have name and country redacted.) A cursory review of any of these files shows that the government already has well organized factual files that it can produce quickly.

It makes no sense for the government to produce files, even in redacted form, to the Associated Press for viewing by the entire world and not produce the same file to a petitioner's attorney. Without the ability to review the CSRT file, the undersigned will have a much harder time preparing the case or discussing the facts with his client. The Court should order the government to produce Sadkhan's CSRT file to the undersigned with all the protections of the above described protective orders.

At least eight judges of this bench (Bates, Friedman, Huvelle, Kessler, Roberts, Sullivan, Urbina and Walton) have ordered the government to make factual returns. In *Battayav v. Bush*, 05-714 docket number 12, page 3, Judge Walton considered but rejected the same argument the

---

[1] The undersigned applied for a security clearance with the Department of Justice's Security Clearance office by cover letter of 7 September 2005 and intends to make an initial client visit as soon as the security clearance is approved and the protective orders described above are entered.

government makes here -- that the submission of factual returns is burdensome and risks the inadvertent disclosure of classified information -- because the factual returns were necessary for petitioners' counsel to effectively represent them even in an initial meeting. Judge Bates made the same point in *Al-Anazi v. Bush*, 05-345, 2005 WL 1119602, at page 10, docket number 21. Judge Urbina rejected the same arguments the government makes here:

> As to the government's concerns regarding classified information, the protective orders entered in this case will guard against any inadvertent disclosures. Finally, the government's generic references to the expenditures of its resources and logistical burden does not persuade the court to delay ordering the return; the court is confident that the government can handle this task.

*Qayed v. Bush*, 05-454, docket number 5, page 2. See also, Judge Kessler's order in *Al-Adahi v. Bush*, 05-301, docket number 26, page2 ; Judge Friedman's order in *Al-Wazan v. Bush*, 05-329, docket number 37, page 1; Judge Huvelle's order in *Kurnaz v. Bush*, 04-1135, docket number 12, page 5; Judge Robert's order in *El-Banni v. Bush*, 04-1144, docket number 10, page 7; and Judge Sullivan's order in *Errachidi v. Bush*, 05-640, docket entry of 21 April 2005.

    Judge Sullivan ordered the government to file its factual return within seven days. Judge Roberts ordered the government to file a factual return within 30 days after entry of the protective order. Judges Urbina, Huvelle, Friedman and Kessler allowed for 90 days. Judges Walton and Bates allowed for 120 days. On two occasions when the government was ordered to provide factual returns within seven days it was able to comply without issue. See *Errachidi v. Bush*, 05-640, docket numbers 15 and 16 (Judge Sullivan on 21 April 2005 ordered the government to make its return within seven days and the government did so on 26 April 2005) and *Abdullah v. Bush*, 05-23, docket numbers 24-26 (Judge Roberts on 8 April 2005 required the government to file factual returns by 14 April 2005 and the government did so on 15 April 2005). Sadkhan respectfully requests that this

Court require that factual returns be filed within 30 days after entry of the protective orders.

## Conclusion

This Court should enter the protective orders attached to the government's motion as Exhibits A through C and deny the stay request. If this Court grants the stay, it should last only until the court of appeals issues its decision and require the government to provide a factual return within 30 days after entry of the protective orders.

Respectfully submitted,

By:/s/ William A. Wertheimer, Jr.
William A. Wertheimer, Jr.
Counsel for petitioner Jawad Jabbar Sadkhan
30515 Timberbrook Lane
Bingham Farms, MI 48025
(248) 644-9200

Of Counsel
Barbara J. Olshansky
Center for Constitutional Rights
666 Broadway
New York, NY 10012
(212) 614-6439

Dated: 21 October 2005

## CERTIFICATE OF SERVICE

I, William A. Wertheimer, Jr., hereby certify that on 21 October 2005, I caused to be served via the e-filing system copies of the foregoing instrument on the following counsel for record for respondents:

Preeya M. Noronha
United States Department of Justice
Civil Division - Federal Programs Branch
20 Massachusetts Avenue NW, Room 7226
Washington, D.C. 20530
(202) 514-3338

Signature:    s/William A. Wertheimer, Jr.

7