IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOWAD JABAR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1487 (RMC) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## DECLARATION OF TERESA A. McPALMER

Pursuant to 28 U.S.C. § 1746, I, Commander Teresa A. McPalmer, Judge Advocate General's Corps, United States Navy, hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1.     I am the Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2.     I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Jowad Jabar that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel and foreign nationals in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _22 December 2005_

_Teresa A. McPalmer_
Teresa A. McPalmer
CDR, JAGC, U. S. Navy



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: **854**

FOR OFFICIAL USE ONLY

**29 JAN 2005**

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 433**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN # 433 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

FOR OFFICIAL USE ONLY

UNCLASSIFIED

19 Jan 05

MEMORANDUM

From:  Assistant Legal Advisor
To:    Director, Combatant Status Review Tribunal
Via:   Legal Advisor

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
       FOR DETAINEE ISN # 433

Ref:   (a) Deputy Secretary of Defense Order of 7 July 2004
       (b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl:  (1) Appointing Order for Tribunal # 19 of 4 November 2004
       (2) Record of Tribunal Proceedings

1.  Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b).  After reviewing the record of the Tribunal, I find that:

   a.  The detainee was properly notified of and actively participated in the Tribunal process. The detainee provided a sworn oral statement at the Tribunal hearing.

   b.  The Tribunal was properly convened and constituted by enclosure (1).

   c.  The Tribunal substantially complied with all provisions of references (a) and (b). Note that some information in exhibit R-12 was redacted.  The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant.

   d.  The detainee requested witnesses and documentary evidence.

Witnesses Requested

Exhibit D-a to the Tribunal Decision Report reflects that the detainee asked his Personal Representative for two unnamed witnesses.  He subsequently requested that a fellow detainee, Interment Serial Number (ISN ████ testify.

The Unclassified Summary, Enclosure (1) to the Tribunal Decision Report indicates that the witness [Detainee] requested four witnesses who were determined to be not reasonably available:

   1. ████████████
   2. ████████████
   3. ████████████

UNCLASSIFIED

Subj:   LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
        FOR DETAINEE ISN # 433

4.  

The Tribunal Decision Report does not indicate who these witnesses are or their proffered testimony. Without providing this information, the Tribunal President found the witnesses relevant. While the witnesses were relevant, the Afghanistan government did not respond to requests from the Department of State. Under the circumstances, the Tribunal President determined that the witnesses were not reasonably available and that no alternative means of obtaining the testimony was available. In my opinion, based on the non-responsiveness of the Afghanistan government, this decision was not an abuse of discretion by the Tribunal President and no corrective action is needed.

The Unclassified Summary also addresses the detainee's request for ISN # ██ The Tribunal President determined that this witness was relevant. The Tribunal Decision Report states that the witness was reasonably available but declined to testify. Although not noted in the Tribunal Decision Report, by declining to testify, ISN # ██ became reasonably unavailable. This minor omission does not affect the legal sufficiency of the proceedings and no corrective action is needed.

<u>Documentary Evidence Requested</u>

During his interview with his Personal Representative, the detainee requested that questions be sent to the Police Station in Mazar Shareef. The Tribunal President failed to address these questions and it is unclear whether the questions were determined to be relevant or were even sent. While the Tribunal President should have addressed this issue, the non-responsiveness of the Afghanistan government precludes the possibility that any response could have been obtained. Under these circumstances, the Tribunal President's failure to comment on the detainee's request constitutes harmless error.

The detainee also requested a piece of paper that was given to him in 1998 from the United Nations that stated he was under the protection of the United Nations while in Pakistan. The detainee stated that he had seen a picture of this paper in the possession of one of the interrogators in Guantanamo Bay. The Personal Representative unsuccessfully attempted to locate this document. Therefore, the Tribunal President made the determination that the document was not reasonably available. The Tribunal President failed to determine the relevancy of the paper. Even if we assume that the facts as stated by the detainee are true, the document would have no bearing on the detainee's status as an enemy combatant. In my opinion, no corrective action is required.

During his sworn testimony, the detainee indicated that he had asked his father to provide him with 1) his selective service paper and 2) statements from witnesses who would confirm aspects of his story. The detainee did not ask the Tribunal or his personal representative to contact his father. In my opinion, the Tribunal President acted correctly in not treating this as a formal evidence request and no corrective action is necessary.

Subj:  LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL
FOR DETAINEE ISN # 433

The detainee did not request any additional witnesses or evidence.

e.  The Tribunal's decision that detainee # 433 is properly classified as an enemy combatant was unanimous.

2.  The proceedings and decision of the Tribunal as reflected in enclosure (2) are legally sufficient and no corrective action is required.

3.  I recommend that the decision of the Tribunal be approved and the case be considered final.

BREE A. ERMENTROUT
CDR, JAGC, USNR



# Department of Defense
## Director, Combatant Status Review Tribunals

4 Nov 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #19

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

███████████████ Colonel, U.S. Army; President

███████████████ Commander, U.S. Navy; Member

███████████████ Major, JAGC, U.S. Army Reserve; Member
(JAG)

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Navy



# HEADQUARTERS, OARDEC FORWARD
GUANTANAMO BAY, CUBA
APO AE 09360

MEMORANDUM FOR DIRECTOR, CSRT                    27 December 2004

FROM: OARDEC FORWARD Commander ICO ISN 433

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN ████.

FOR

CHARLES E. JAMISON
CAPT, USN

SECRET//NOFORN//X1

### (U) <u>Combatant Status Review Tribunal Decision Report Cover Sheet</u>

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL:    #19

(U) ISN#:    433

Ref:    (a) Convening Order for Tribunal #19 of 4 November 2004 (U)
      (b) CSRT Implementation Directive of 29 July 2004 (U)
      (c) DEPSECDEF Memo of 7 July 2004 (U)

Encl:    (1) Unclassified Summary of Basis for Tribunal Decision (U/FOUO)
      (2) Classified Summary of Basis for Tribunal Decision (S//NF)
      (3) Summary of Detainee/Witness Testimony (U//FOUO)
      (4) Copies of Documentary Evidence Presented (S//NF)
      (5) Personal Representative's Record Review (U)

(U) This Tribunal was convened on 3 December 2004 by references (a) and (b) to make a determination as to whether the Detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

(U) The Tribunal has determined on 3 December 2004 that Detainee #433 is properly designated as an enemy combatant as defined in reference (c).

(U) In particular, the Tribunal finds that this Detainee is a member of, or affiliated with, the Taliban, as more fully discussed in the enclosures.

(U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).



Colonel, U.S. Army
Tribunal President

SECRET//NOFORN//X1

UNCLASSIFIED/~~FOUO~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

### (Enclosure (1) to Combatant Status Review Tribunal Decision Report)

TRIBUNAL PANEL: _____#19_____
ISN #: _____433_____

## 1. Introduction

As the Combatant Status Review Tribunal Decision Report indicates, the Tribunal has determined that this Detainee is properly classified as an enemy combatant and is a member of, or affiliated with, the Taliban. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal. Any classified evidence considered by the Tribunal is discussed in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

## 2. Synopsis of Proceedings

The unclassified evidence presented to the Tribunal by the Recorder indicated that the Detainee is associated with al Qaida and the Taliban. The Detainee was a Taliban Group Commander. The Detainee recruited soldiers for the Taliban. The Detainee conscripted fighters. The Detainee was the Director of Intelligence for the Taliban at Mazar-E-Sharif, Afghanistan. The Detainee was the chief of the Taliban's Interrogation Office at Mazar, Afghanistan. The Detainee chose to participate in the Tribunal process. He called five witnesses, requested one document be produced, and made an oral, sworn statement. The Tribunal President found that four of the requested witnesses were not reasonably available, and that alternative means of producing the witness's testimony were also not reasonably available. The fifth requested witness, while reasonably available and deemed to be relevant by the Tribunal President, was not willing to testify on the Detainee's behalf. The Detainee, in his sworn, oral statement, denied being a Taliban member. The Tribunal President's evidentiary and witness rulings are explained below.

## 3. Evidence Considered by the Tribunal

The Tribunal considered the following evidence in reaching its conclusions:

    a. Exhibits: D-a, R-1 through R-16

    b. Testimony of the following persons: none.

    c. Sworn statement of the Detainee.

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

## 4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses

The Detainee requested four witnesses be produced for the hearing:

| Witness | President's Decision | Testified? |
|---|---|---|
| ███████████ | (not) reasonably available | no* |
| | (not) reasonably available | no* |
| | (not) reasonably available | no* |
| | (not) reasonably available | no* |
| | reasonably available | no** |

* The Tribunal President deemed that the Detainee's request for these witnesses were relevant to the Detainee's status as an enemy combatant. The Department of State was contacted on 9 November, with follow-up attempts made on 22 November and 30 November. As of 3 December 2004, the Department of State had received no response from Afghanistan as to the status of these witness requests. Therefore, the Tribunal President made the determination that based on the attempt to contact and lack of response; the witnesses were not reasonably available.

**The Tribunal President determined that this witness, based on his proffered testimony would be relevant to the Detainee's status as an enemy combatant. The Personal Representative met with the witness on 3 December 2004 and the witness elected not to testify on the behalf of the Detainee.

The Detainee requested one document be produced:

| Evidence | President's Decision | Produced? |
|---|---|---|
| Copy of a UN document | not reasonably available | no* |

* The Detainee had asked the Personal Representative to produce a document that was given to him in 1998 from the UN that stated he was under the protection of the UN while he was in Pakistan. The Detainee stated that he had seen a picture of this paper (with a picture of him and his wife) when he talked to an interrogator since he has been at GTMO. The Personal Representative attempted to locate this document in the Detainee Property section and the S2 section. Neither of the two offices could produce this document. Therefore, the Tribunal President made the determination that based on the attempt to locate, this document was not reasonably available.

## 5. Discussion of Unclassified Evidence

The Tribunal considered the following unclassified evidence in making its determinations:

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/FOUO

a. The recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2 provided no usable evidence. Accordingly, the Tribunal had to look to classified exhibits for support of the Unclassified Summary of Evidence.

b. Essentially the only unclassified evidence the Tribunal had to consider was the Detainee's sworn testimony. A summarized transcript of the Detainee's sworn testimony is attached as CSRT Decision Report Enclosure (3). In sum, the Detainee stated that all of the allegations were false. The Detainee stated that he had enemies in detention with him that made up things about him. He was not a leader or a group commander; he was simply a taxi cab driver. The Detainee was an immigrant who ran from the Iraqi army to Iran, to Pakistan and finally to Afghanistan. Once in Afghanistan, he drove his taxi, helping whoever could afford to pay the fare. The Detainee stated that he did not recruit anyone; he couldn't even speak the language. How could he have possibly held high ranking positions if he doesn't even speak the language. After four years in Afghanistan and three years in Cuba, he can't even put together enough words in Farsi to make a sentence, let alone read and write it. The Detainee stated that the Director of Intelligence for the Taliban is here in Cuba. He didn't know the laws of the Koran or the country, why would they (the Taliban) give him these high positions. When questioned further about this UN document that could not be produced, he stated it was to request asylum since he was a refugee from Iraq.

The Tribunal also relied on certain classified evidence in reaching its decision. A discussion of the classified evidence is found in Enclosure (2) to the Combatant Status Review Tribunal Decision Report.

6. Consultations with the CSRT Legal Advisor

No issues arose during the course of this hearing that required consultation with the CSRT legal advisor.

7. Conclusions of the Tribunal

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The Detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed appropriate.

b. The Detainee understood the Tribunal proceedings. He asked no questions regarding his rights and actively participated in the hearing.

UNCLASSIFIED/FOUO

UNCLASSIFIED/~~FOUO~~.

c.  The Detainee is properly classified as an enemy combatant and is a member of, or affiliated with the Taliban.

## 8.  Dissenting Tribunal Member's report

None.  The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

UNCLASSIFIED/~~FOUO~~

UNCLASSIFIED/~~FOUO~~

### Summarized Sworn Detainee Statement

*The Tribunal President read the hearing instructions to the detainee. The detainee confirmed that he understood the process and had no questions.*

*The Recorder presented Exhibits R-1 and R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).*

*The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.*

Tribunal President:  According to the D-a election form, you asked for three witnesses and some information from a police station.  The Tribunal deemed that they could be relevant to your case.  We contacted our Department of State on 9 November 2004 and also had follow-ups on the 22nd and the 30th of November to get the information.  As of today there was no response to these witness from the government in Afghanistan.  Therefore with the lack of response, these witness are not reasonably unavailable.  If this information does come across at a later date, the Tribunal will consider whether to reopen your tribunal case.

You had also requested a piece of paper referencing U.N. protection that you have, and that you indicated that you seen a picture of this piece of paper when you were being interrogated here at Gitmo.

Detainee:  I don't remember what paper it was.

Personal Representative:  He said, it was a piece of paper that was given to him in 1998. I did not find the document.

Detainee:  Yes, I did see it during interrogation.  It is there I saw it myself.

Tribunal President:  The Personal Representative did look for it and didn't find it anywhere on the island.  We will take your statement that the paper exists.

The last witness that you asked for yesterday, he has declined to testify on your behalf.

Detainee:  I spoke with him and he said he would come to the tribunal, and tell you what he heard and seen.  That then shows you the relationship between the Shiite and Sunni's. I am a Shiite and he is a Sunni and there is hatred, if I had known he was a Sunni I would not have invited him to my house.  He deceived me and told me he was a Shiite that is why we don't have a relationship.

*The Detainee took the Muslim oath.*

*The Personal Representative read the accusations to the detainee so that he could respond to the allegations. The allegations appear in italics, below.*

UNCLASSIFIED/~~FOUO~~

### 3.1.  *The detainee was a Taliban Group Commander.*

Detainee:  I was not a leader or a group commander for the Taliban.  I am a taxicab driver.  All the witnesses that gave you this evidence were Sunni's.  In the beginning they didn't say all these accusations.  After we had a problem they were cursing each other and were causing problems here.  They also sued me.  They complained that I was a commander of the Taliban.  I cannot be with the Taliban for more than one hour if I was with them.  I don't know their religion; if I stayed with them I didn't know their prayers.  If they found out I was a Shiite, they would take my wife and kids and imprison me.  If they put me in prison they will execute me.  When I speak it is with an accent and they will know I am a Shiite.  They know all the people that are coming from Iraq are from the south and are all Shiite's.  The Taliban used to give me my food.  I asked the interrogators to ask the neighbors about my situation on how I used to get my food.  The guy I asked to be my witness here today, he was going with me too, but nobody here at this camp wants to see me get out.  They curse me when they pray, they say to God "Kill him don't send him to his family."  How could I be a commander of a group of people if I don't have food for myself?  Taliban gave even my food to me; they were helping because I was an immigrant there.  I was helping the women and children by giving them rides from one village to another village.  Not just women and children but anyone willing to pay me money since I had a taxi.  I was also transporting wheat, chopped wood.  How could I be a commander?  When they first caught me (and) five brothers and the commander who caught me was an Afghani.  I am an Iraqi immigrant and I had my wife and kids with me.  They came to my house and took me from the house.  The American interrogator told me it was nothing more than procedures that they have to follow.  They were going to interrogate me and ask me some questions; then let me go back to the village.  From that point they took me to Qandahar, and they interrogated me further, the same interrogator said they asked about me in Mazar-e-Sharif and they were sure about all the information, and these are the steps and I have to follow and I have to go to Cuba.  That interrogation was done about a year ago.  The answer came from Washington that I was to be released.  During that time there was problems with other Iraqi people and the Yemeni kind.  The stopped talking to me in the cells about me, after that they signed a document stating that anything they said about me was a lie.  The individual who squealed on me was a drug addict; he came to my house in Mazar-e-Sharif and said he was my brother, that he is an immigrant just like me.  He said help me I am very hungry, I didn't have any food and so I borrowed money to give it to him.  He came back a second time and I helped him out again.  I heard he was a drug addict and had a bad reputation.  I told him and kicked him out, he held a grudge against me.  We both had the same interrogator, they asked him about me and he said he didn't have any information about me.

### 3.2.  *The detainee recruited soldiers for the Taliban.*

Detainee:  As far as the Taliban is concerned, they thought it was nothing more that a Jihad.  All the people of Afghanistan, they were using guns.  How is it possible that I don't know the language, the people, and I had no money; how can I recruit the people?  Did I advertise on the radio?  That point doesn't make any sense at all.

UNCLASSIFIED/~~FOUO~~

That drug addict made up all these allegations. I am talking about the witness I requested for today. He was living with me and when I had money, I would bring my food home and share with him. If I wanted to recruit anybody, I would have recruited him to the Taliban. I am afraid of the Taliban.

*3.3. The detainee conscripted fighters.*

Detainee: Which fighters are you talking about? This guy you are talking about is a drug addict or if it was a different individual and if was an Arab, they were saying killing me is a blessing. The Arabs went to Afghanistan so they can kill the Shiite's. How is it I am being accused of being with Taliban or al Qaida? I have no connection with these people, and I myself am afraid of the Arabs. The Afghani's may not know that I am Shiite but the Arabs do.

*3.4. The detainee was the Director of Intelligence for the Taliban at Mazar-e-Sharif, Afghanistan.*

Detainee: I have no answer to that, the director of intelligence you have him here. How can I be the director of intelligence, if I speak, they don't understand me and if they speak, I don't understand them. I don't know how to read or write in their language. If I were in charge or the director of intelligence, why would I ask the interrogator to testify and be a witness? These accusations are impossible and are made up. The Afghani people or the Pashtu cannot reach that high position as director of intelligence. Why would they give that to me?

*3.5. The detainee was the chief of the Taliban's Interrogation Office at Mazar, Afghanistan.*

Detainee: The director of intelligence was imprisoned, he gave some kind of kickback to Mullah Abdul Salam and he paid off Dustom when he got out of prison and some of his guards were still in prison. He was fully aware of Koran, and he is Pashtu and speaks Pashtu, Farsi, and Arabic better than me. These people use the Sharia against me, who am I to use the Sharia against them. I didn't even pray when they picked me up and put me among the Arabs in Qandahar. If the chief of the police went to do a job, the head of the interrogation department becomes the chief of police. Why would they give me this high position? They had some other prisoners right now in Sherbergan, and they were asking me if the chief interrogator was in prison with me or not. If I had something to do with him, I am asking the director of intelligence to be my witness. It was be pretty stupid of me to ask somebody to be my witness if I had been the director of intelligence. When the chief interrogator comes to my house and he was with Mullah Abdul Raouf and he speaks Pashtu, Farsi and Arabic; he also knows the Koran and the Sharia. There are Koran laws and it is very hard to put someone in this position that doesn't know the laws of the country and rules of the Koran. If there are some Afghani's here, you can ask them if there is an Arabic guy in Afghanistan that held a very high position. If the answer was yes, they placed Arab or an Iraqi in a high position, then he will ask you to keep him here in the prison for the rest of his life.

UNCLASSIFIED/~~FOUO~~

Nobody will get that position unless he is well connected. You have the director of intelligence here. I told that to the interrogator name ████ here. She laughed and said, "Yes." So why are you accusing me? The Afghani people from the Mazar-e-Sharif and from the village came to interrogate me. The United States came for the Arabs and they went to the investigation to ask about me. I went to Qandahar. They sent me letters and said they wanted to visit me to see if they can get vacation for me. They were afraid I only received eight letters. My wife and kids stayed in Mazar-e-Sharif and the people were giving them bread. My wife wrote to me and told me not to worry about them. They got a card from the Red Cross. They are giving us bread and the people were helping us. I was living by myself over there and helping the Northern Alliance. When Mazar-e-Sharif fell, I was with the Northern Alliance. The New Government gave me a paper (letter) that did not interfere with my life. I sat with Mouan Dostum, he asked me for money and I told him I didn't have any. So there was a problem between Massoud and Dostum. The Massoud people were saying that we know he is an immigrant and didn't have any money. The people of the village said "If you need money we would take a collection." If he doesn't pay me the money, I will turn him over, and he didn't say, "I will turn him over to the Americans, I will sell him to the Americans." The same Kamel Mouan Dostum, he is the administrative person for Dostum. He advertised on the radio, anybody that finds an Arabic or informs about an Arab will get 3000 dollars. I was among the people living there for two months with out any problems. This is the money that brought me here and I left my family back there. The neighbors were giving me the bread. The interrogators were asking in Qandahar and I didn't have any problem there. I gave the telephone numbers to the American people on 3 January 2002. I had the telephone of the company that has the car, there were two cars and the price of the two cars was eight hundred dollars. You can check on that, I repaired the cars. I fixed it and turned around and sold it and bought another car. Before that I used to own a shop for the outside connection or calls because I couldn't speak their language. I had to hire an Afghani man and he was there working for three months and he was stealing. Three months later I sold that shop. I became a partner with an older man; we were selling Benzene. Before that when I was in Pakistan, you had a telephone number for one of my people. He is in the United States in New York, he is in a mission organization for the Shiite and he is the head of that organization. For three days my wife and daughter didn't eat the food. I asked an Iraqi guy, he is a Imam or Mullah, I asked him if I could contact my relatives. After I requested that, I was kind of shy to call my relative and my wife called and when she talked to him, she cried and told him that we are hungry; he sent us 350 to 400 dollars. I fled Iraq, I didn't go for Jihad. I was living in Iran for over a year. I was selling vegetables in the street and there I couldn't communicate with the people, Even though the market was for Iraqi's, when an Iranian came to buy from me I cannot sell him anything because I can't understand him. I had a very hard time, the people that was supposed to take me to Iran and they left me there. I gave their name and address to the interrogators. I sent a letter to my father so they can write their statement and send it over here. I am an immigrant, a Shiite and I had a hard time. I contacted my father and asked him to send me my documentation (selective service paper), and also get the testimony of other witness to how I was living. I haven't heard anything; the interrogators are delaying those things.

UNCLASSIFIED/~~FOUO~~

Tribunal President: Does that conclude your statement.

Detainee: If you have any questions I am ready for you now.

Tribunal President: Personal Representative do you have any questions for the detainee?

Personal Representative: Yes Ma'am, do you speak any languages such as Farsi, Persian or Dari?

Detainee: I don't speak any other language; What ever I learned of the Farsi I learned it in Afghanistan. I have been here for three years and you can look in my file that I can't live with these people. I lived with the Afghan and I speak Farsi. Three years in prison and four years in Afghanistan, a total of seven years, I cannot make up one full statement. As far as reading and writing that is impossible.

Personal Representative: How did you get customers for your taxi?

Detainee: There is a place for the taxis and people went there were the taxis were. I don't work inside the cit. There is a special parking spot for the all taxis just for the village. Everyone knows where that parking is. It was like a pickup, I could carry wheat, wood and other items. I would take the people from one location in the morning and bring them back in the afternoon. I worked many jobs, but the interrogators picked on one or two jobs. They didn't tell you I opened up a small shop selling watermelons and I lost a lot of money. How could I be the director of intelligence and selling watermelon in the street? Why is it that the interrogator didn't tell you the director of intelligence is here in the prison? What business of it is mine? The people and the Taliban were wearing a long robe and turban on their head, so I wore the turban. I even grew a long beard, if I didn't have a long beard I couldn't walk down the streets. The beard is just like a visa. When I was in Mazar-e-Sharif there was a British family living there. Why didn't they bring that British family here? They were living off the Taliban, him and his wife. He was also an immigrant in Afghanistan. You didn't bring him here, and he still may be there. You brought me here despite the fact all the people testified in my favor; even the American that was there, heard the testimony of the other people. Don't worry about anything you will get back. They tried to get me out and for some reason or another I haven't gotten out yet. The interrogator told me, we have a lot of names of Afghani's, and that they interrogated them. Anybody that goes to the director of intelligence would have to sign a register, if you go there as a person who is being accused, they will write down your accusations. If you get one Afghani or Arabic witness, all they have to say is this guy interrogated me. If you can get one witness against me, you can put me at camp five for the rest of my life. The Taliban fell but the people are still there.

Tribunal President: Does the Recorder have any questions for the detainee?

Recorder: Yes Ma'am, A few moments ago you said you asked your father for documents for selective service in your country. The question is what country?

UNCLASSIFIED/FOUO

Detainee: al Basara Aumqusar (ph)

Recorder: Did you receive any military training? Did you carry a weapon in Afghanistan?

Detainee: No, it was in Iraq.

*The Personal Representative and the Recorder had no further questions.*

Tribunal President: Do any of the Tribunal Members if they had any questions for the Detainee.

*Tribunal Members' questions.*

Tribunal Members: Yes Ma'am, Sir I have some very specific questions and I would appreciate if you give a concise answer.

Q. You are a native of Iraq?
A. Yes, Sir.

Q. When did you go to Afghanistan?
A. In 1998.

Q. You were arrested approximately how long after that?
A. In 2002.

Q. You speak what languages?
A. Arabic.

Q. Apparently you speak a little bit of other languages?
A. Farsi and English.

Q. How long were you a soldier in Iraq?
A. In 86 at the police department in al Basara, 87 I went to the Army, then I escaped and they put me in jail, 89 I left the prison then I escaped again. There was a decision from the interior minister that stated anybody that was in the Army from the police department would have to be expelled from the Army. I left and got a piece of paper from the Army. I went to the police department in al Basara and they took the paper that I got from the Army and they put it on a piece of paper and signed it and stamped it. I took it to the selective service.

Q. Have you ever fought in any battles?
A. No.

UNCLASSIFIED/~~FOUO~~

Q. Why do people here want to see you stay here?
A. Because they are my enemy, they are my enemy religiously. I am a Shiite and they are Sunnis, the Sunnis oppose the Shiites.

Q. In Afghanistan, were people friendly to you there?
A. Yes, they were very friendly.

Q. Why did you select Afghanistan to go to?
A. I didn't select Afghanistan to go to. After my relatives sent me money, there were two Iraqi guys that told me they would take me to a village via Afghanistan since there was not a place to stay. I didn't know it was a police department and I left my wife and daughter outside and I explained to him my story and there was no Iraqi guy there. They said there were no hotels for the families since we are strangers here. They told me to leave my wife and daughter inside and I was to stay outside with the guards and they will find a house for us. Three days later they found a house for me. They took me to the immigration department and every month I filled out a petition and they give me food. All these petitions I filled out, you can check out. In Qandahar they already asked about me.

Q. Where did you intend to go from Iraq, if you didn't intend to go to Afghanistan?
A. I was in Iraq for one year and two months. Other Iraqi people convinced me that there were some United Nations people that will give us a monthly income, along with medication and housing arrangements. I was convinced and I went with them. I filled out some petition and they gave me documentation, but they didn't help me with anything at all. There were other Iraqi families there; they were paying some families some monthly income and food. I knew it would take me some time; I was really starving so I couldn't stay there. I called my relatives and he gave me the money. I was in Pakistan for approximately 2 ½ months. You have the telephone number of my relative; you can ask them about in 1998. The woman that talked to you and you sent her the money in Karache and that is the Shiite Missionary Organization.

Tribunal Member: Personal Representative and Interpreter was there a prepared translated statement for the detainee to read during the interview? And did he read it?
Personal Representative: Yes, He was reading it.

Tribunal Member: Was it obvious that he was reading it?
Interpreter: Yes, he was looking at the paper and reading the next allegations.

Q. Didn't you make a statement earlier that you couldn't read?
A. I couldn't read Farsi.

Q. You can read and write in Arabic?
A. Yes.

Q. Why didn't you stay in the Iraqi Army?

UNCLASSIFIED/~~FOUO~~.

A. The government was against us. We wanted to be in the police department so we didn't have to fight.

Q. How long did you train in the Iraqi Army?
A. 45 days for training.

Q. Who gave you the piece of paper from the United Nations and why?
A. The United Nations in Pakistan.

Q. Why did they give this to you?
A. They gave it to all the immigrants.

Q. What was the purpose?
A. There was no place for me to stay.

*The Tribunal President confirms that the detainee had no further evidence or witnesses to present to the Tribunal. The Tribunal President explains the remainder of the Tribunal process to the detainee and adjourns the Tribunal.*

## AUTHENTICATION

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.



Colonel, United States Army
Tribunal President

# DETAINEE ELECTION FORM

**Date:** 2 Nov 2004

**Start Time:** 0840

**End Time:** 1025

ISN#: _____433_____

**Personal Representative:** ▓▓▓▓▓▓▓▓▓ Major, USAF
**(Name/Rank)**

**Translator Required?** YES          **Language?** _____ARABIC_____

**CSRT Procedure Read to Detainee or Written Copy Read by Detainee?** YES

--------------------------------------------------------------------------------

## Detainee Election:

[X]  **Wants to Participate in Tribunal**

[ ]  **Affirmatively Declines to Participate in Tribunal**

[ ]  **Uncooperative or Unresponsive**

## Personal Representative Comments:

  The detainee was briefed on the CSRT process and he elected to participate in his Tribunal.  He will attend the Tribunal and will make a statement.  He requested 2 witnesses and also that some questions be sent to the Police Station in Mazar Sharef.  He also mentioned a piece of paper that was given to him in 1998 from the UN that stated he was under the protection of the UN while he was in Pakistan.  He stated that he had seen a picture of this paper (with a picture of him and his wife) when he talked to an interrogator since he has been at GTMO.

  (note: As of 02 Dec 04, the Department of State has not received a reply from Afghanistan in response to the inquiry regarding Detainee #433's witnesses.  Also, a check of Detainee Property and the S2 office at GTMO have not been able to verify that a UN document exists.  During the Final interview with #433 on 2 Dec 04, he stated that since he could not have his out-of-camp witnesses testify, he would like Detainee #▓▓▓▓▓▓▓▓▓▓ to be his witness.  The Tribunal President ruled that ▓▓▓▓ would be relevant in this case.  Detainee ▓▓▓ declined to be a witness during a witness interview on 3 Dec 04.)

Personal Representative: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Exhibit D-a

UNCLASSIFIED

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (22 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – SADKHAN, Jawad Jabber

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that the detainee is associated with al Qaida and the Taliban.

   The detainee is associated with al Qaida and the Taliban:

   1. The detainee was a Taliban Group Commander.

   2. The detainee recruited soldiers for the Taliban.

   3. The detainee conscripted fighters.

   4. The detainee was the Director of Intelligence for the Taliban at Mazar-E- Sharif, Afghanistan.

   5. The detainee was the chief of the Taliban's Interrogation Office at Mazar, Afghanistan.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

UNCLASSIFIED

Exhibit _R-1_

UNCLASSIFIED

# Memorandum



To    :    Department of Defense            Date 11/18/2004
           Office of Administrative Review
           for Detained Enemy Combatants
           Col. David Taylor, OIC, CSRT

From  :    FBI GTMO
           Counterterrorism Division ████████████
           Asst. Gen. Counsel ████████████

Subject:   REQUEST FOR REDACTION OF
           NATIONAL SECURITY INFORMATION
           ████████████

        Pursuant to the Secretary of the Navy Order of 29 July
2004, Implementation of Combatant Review Tribunal Procedures for
Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba,
Section D, paragraph 2, the FBI requests redaction of the
information herein marked[1].  The FBI makes this request on the
basis that said information relates to the national security of
the United States[2].  Inappropriate dissemination of said
information could damage the national security of the United
States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A
DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

        The FBI certifies the aforementioned redaction contains
no information that would support a determination that the
detainee is not an enemy combatant.

        The following documents relative to ISN 433 have been
redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/16/2002

---

        [1]Redactions are blackened out on the OARDEC provided FBI
document.

        [2]See Executive Order 12958

UNCLASSIFIED

Exhibit  R-2

*UNCLASSIFIED*

Memorandum from ███████ to Col. David Taylor
Re:  REQUEST FOR REDACTION, 11/18/2004


        If you need additional assistance, please contact Asst.
Gen. Counsel ███████████ ███████████), or Intelligence Analyst Ronald
███████████████████████████████████████████████
Intelligence Analyst.

-2-

UNCLASSIFIED//~~FOUO~~

# Personal Representative Review of the Record of Proceedings

I acknowledge that on <u>09</u> December 2004 I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #433.

 I have no comments.

___ My comments are attached.

<u>Major</u> 
Name

<u>09 Dec 2004</u>
Date

Signature

ISN #433
Enclosure (5)