**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAWAD JABBAR SADKHAN, *et al.,* ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1487 (RMC) (AK) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.,* ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION TO COMPEL**
**PRIVILEGE TEAM COMPLIANCE WITH THE AMENDED PROTECTIVE ORDER**

Respondents, through undersigned counsel, hereby oppose petitioner's motion to compel

Privilege Team compliance with the Amended Protective Order (dkt. no 21).

The instant opposition is submitted on behalf of respondents in the interest of proper

administration of the protective order and counsel access regime governing the Guantanamo

detainee habeas cases.  To the extent a submission from the Department of Defense Privilege

Team directly would assist the Court in its consideration of petitioner's motion, the Court should

authorize the Special Litigation Team, which represents the Privilege Team in other cases and is

subject to the same nondisclosure constraints as the Privilege Team itself, to appear on behalf of

the Privilege Team in this matter and defend its action, as appropriate.

Petitioner's motion seeks an order compelling the Privilege Team to conduct

classification review of a two-page statement written by an unidentified detainee at Guantanamo

who purportedly has confessed to lying about petitioner.  As explained below, no basis exists for

such an order.  The Court not only lacks jurisdiction by virtue of the Detainee Treatment Act of

2005, which vests exclusive jurisdiction over this action in the D.C. Circuit, but the actions of the Privilege Team challenged by petitioner are fully justified and consistent with the governing protective order and counsel access regime. First, contrary to petitioner's contention, the Privilege Team is under no legal obligation to perform a classification review of every document presented to it by habeas counsel. The privileged "legal mail" channels created by the governing counsel access procedures are reserved for certain communications between properly represented habeas petitioners and their counsel delineated by the access procedures. Thus, the Privilege Team has the authority under the access procedures to refuse to conduct classification review of materials that do not fall within the proper confines of the legal mail channels. Second, the Privilege Team correctly refused to review the two-page statement at issue in petitioner's motion because it was written by a third-party detainee not represented by petitioner's counsel. Indeed, use of the privileged legal mail channels by third-party detainees who are not participating in this case or subject to the requirements of the counsel access procedures is wholly improper. For these reasons, petitioner's motion to compel should be denied.

## **BACKGROUND**

On November 8, 2004, Senior Judge Joyce Hens Green, in the context of the then-pending and coordinated Guantanamo Bay detainee habeas cases, entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba ("Protective Order"), followed shortly thereafter by certain supplementary orders clarifying and detailing certain matters involving the Protective Order. *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended

Protective Order in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in *In re Guantanamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 10, 2004). The Protective Order was entered by Judge Green after the parties had engaged in lengthy negotiations, after certain issues had been litigated, and after Judge Green considered a proposed protective order and counsel access procedures and made her own revisions to them.[1]

The Protective Order, *inter alia*, establishes a regime for the protection, handling, and control of classified and otherwise protected information in light of the unique circumstances of these Guantanamo habeas cases, which involve individuals detained as enemy combatants in an overseas military detention facility during wartime. The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, ("Access Procedures"), which are annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees, including procedures and requirements with respect to information and papers delivered by counsel to detainees, as well as obtained by counsel from detainees, "for purposes of litigating the cases in which this Order is issued." *See* Access Procedures § I.

The Access Procedures permit privileged counsel visits and privileged "legal mail" between counsel and a represented detainee, subject to various requirements and restrictions in recognition of the unique wartime setting of these cases and detentions. *See* Access Procedures § III (listing requirements for access to and communications with detainees). Because all

---

[1] The Protective Order and supplemental orders were entered in this case on November 4, 2005 (dkt. no. 13).

communications to and from the wartime detainees at Guantanamo are normally and appropriately subject to security and intelligence screening by the military, the special, privileged legal communications channels created under the Access Procedures are available only for "legal mail" sent solely "for purposes of litigating the cases in which th[e] Order is issued" between counsel and the detainee that counsel properly represents.  Access Procedures §§ I, II.  Privileged "legal mail" is, by definition, limited to:

> Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly filed legal documents relating to that representation.

*Id.* § II.E.  Detainees, however, are not permitted to use the privileged mail system for non-legal mail or for communications to or from others besides their counsel; the Access Procedures contemplate and require that such communications be routed through the normal mail process at Guantanamo Bay, which includes content screening for national security, intelligence, and physical and personnel security[2] purposes.  *See id*. § IV.B.4.-5. (counsel may not use legal mail channels as conduit for non-legal mail; non-legal mail subject to review by military); *see also id.* § VI.C. (messages to others besides counsel to be processed as non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee through normal, non-privileged mail channels).

Also in recognition of the unique, wartime setting of these cases and detentions, including that information possessed by detainees could have national security or physical and personnel security implications warranting potential treatment of the information as classified

---

[2] This would include information concerning the Guantanamo Bay facility and its personnel.

information, the Access Procedures require that communications from detainees and information learned from them be treated as presumptively classified. *See* Access Procedures §§ III.A., IV.A.6., VI. Such information, including letters and materials reflecting communications to counsel from a represented detainee, may only be handled in a secure fashion and within the secure facility established for such purposes. *See* Protective Order ¶ 26; *id.* ¶¶ 20-24. Counsel, however, may submit such materials to the DoD Privilege Team for a "determination of its appropriate security classification." *See* Access Procedures § VII.; *see also id.* § IV.A.6. (counsel required to treat information learned from a detainee, "including any oral and written communications with a detainee," as classified pending review by Privilege Team).

As set forth in the Access Procedures, the Privilege Team is "[a] team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee."[3] *Id.* § II.D. Absent Court authorization or the consent of counsel submitting the information to the Privilege Team, the Privilege Team cannot disclose to anyone information learned from their review activities, except that the Privilege Team may disclose information indicating an "immediate and substantial harm to national security" or "imminent acts of violence" to officials with a role in responding to such potential harms or violence. *See id.* § VII. A., D.-F. Materials properly subject to Privilege Team review and marked by the Privilege Team as classified may only be handled in a secure fashion and within the secure facility; of course, materials determined to be

---

[3] The Team may also include translators meeting the same qualification. *See* Access Procedures § II.D.

unclassified are not subject to such treatment.  *See* Protective Order ¶ 26; *id.* ¶¶ 20-24.

On June 29, 2006, petitioner filed a motion to compel Privilege Team compliance with the Amended Protective Order.  According to the motion, petitioner's counsel was informed on or about May 18, 2006 that the Court Security Office had received an envelope containing presumptively classified mail addressed to petitioner's counsel from petitioner.  The envelope, in essence, contained two separate documents: 1) a three-page letter written by petitioner to counsel; and 2) a two-page statement written by a detainee other than petitioner at Guantanamo who, it is alleged, confessed to lying about petitioner (presumably to government authorities).  Pursuant to the counsel access procedures, petitioner's counsel requested that the Court Security Office submit the documents to the Privilege Team for classification review.  On June 1, 2006, petitioner's counsel received the three-page letter written by petitioner with a notation that the letter was unclassified.  The Privilege Team, however, refused to perform classification review of the two-page statement written by the unidentified detainee and explained its reasons for this decision in a memorandum to counsel.  The Privilege Team noted in its memorandum that the document was addressed to: "The Supreme Court of the United States and to Whom It May Concern and to Attorney William."[4]  *See* Petitioner's Motion to Compel, Declaration of William A. Wertheimer, Jr., Exhibit B.  As a result of the Privilege Team's decision, petitioner filed the instant motion seeking an order compelling the Privilege Team to conduct classification review of the two-page statement.

As explained below, petitioner's motion to compel should be denied based on the

---

[4] The Privilege Team also noted that the name on the document did not match the name of the detainee whose Internment Serial Number (ISN) is stated in the letter.

Detainee Treatment Act of 2005 and petitioner's erroneous understanding of the Privilege

Team's authority under the Protective Order and Access Procedures.

## ARGUMENT

I.    **The Court Lacks Jurisdiction To Order Relief And, At A Minimum, The Court's Stay Of Proceedings Should Remain In Effect With Respect To Petitioner's Request For Relief.**

Petitioner's motion should be denied because the Detainee Treatment Act of 2005, Pub.

L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), vests exclusive jurisdiction over this action in

the D.C. Circuit.  The Act, among other things, amends 28 U.S.C. § 2241 to eliminate court

jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at

Guantanamo Bay, *id.*, § 1005(e)(1), and creates an exclusive review mechanism in the D.C.

Circuit to address the validity of the detention of such aliens and final decisions of any military

commissions, *id.*, § 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the Act states that the D.C.

Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a

Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant,"

and it further specifies the scope and intensiveness of that review.  While the Supreme Court in

*Hamdan v. Rumsfeld*, 548 U.S. —, slip op. at 7-20 (U.S. June 29, 2006), held that § 1005(e)(1)

of the Detainee Treatment Act did not apply to habeas petitions pending prior to the enactment

of the Act, it recognized that the exclusive review provisions of the Act did expressly apply to

cases pending prior to enactment.  Although the petitioner in *Hamdan* escaped the Act because

his challenge did not involve a final decision of a military commission within the exclusive

jurisdiction of the Court of Appeals under § 1005(e)(3), the Court reserved the question of the

effect of the exclusive review provisions of the Act on other cases, stating that "[t]here may be

habeas cases that were pending in the lower courts at the time the DTA was enacted that do

qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3).  We

express no view about whether the DTA would require transfer of such an action to the District

of Columbia Circuit."  *Hamdan*, slip op. at 18, n.14.  The above-captioned case is such a case,

*i.e.*, challenging petitioner's designation as an enemy combatant through the Combatant Status

Review Tribunal.  Given the Act's investment of exclusive review in the Court of Appeals, the

District Court lacks jurisdiction over this case for it is well-settled that an exclusive-review

scheme, where applicable, precludes the exercise of jurisdiction under more general grants of

jurisdiction, including *habeas corpus*.  *Cf., e.g.*, 5 U.S.C. § 703 ("form of proceeding for judicial

review is the special statutory review proceeding relevant to the subject matter in a court

specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action,

including actions for . . . writs of . . . habeas corpus"); *Thunder Basin Coal Co. v. Reich*, 510

U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of

district court jurisdiction); *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984)

(Hobbs Act) ("The appropriate procedure for obtaining judicial review of the agency's

disposition of these issues was appeal to the Court of Appeals as provided by statute."); *Laing v.

Ashcroft*, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in

which no other judicial remedy is available"); *Lopez v. Heinauer*, 332 F.3d 507, 511 (8th Cir.

2003) ("Because judicial review was available . . . the district court was not authorized to hear

this § 2241 habeas petition.").  *See also Telecommunications Research and Action Center v.

FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("even where Congress has not expressly stated that

statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction in a particular court cuts

off original jurisdiction in other courts in all cases covered by that statute") (footnote omitted);
id. at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future,
exclusive jurisdiction is subject to the exclusive review of the Court of Appeals). The relief
requested by petitioner would require an assertion of jurisdiction and authority in the case
inconsistent with the Act's investment of exclusive jurisdiction in the Court of Appeals, and
respondents' argument in this regard is in no way immaterial or premature. *See Steel Co. v.
Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot
proceed at all in any cause."); *see also Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1869)
("Jurisdiction is power to declare the law, and when it ceases to exist, the only function
remaining to the court is that of announcing the fact and dismissing the cause.").

Thus, the Supreme Court's decision in *Hamdan* has not resolved the issue of whether this
Court may exercise jurisdiction in this case in light of the Act. The effect of the Act was
addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C.
Circuit (*Boumediene v. Bush*, No. 05-5062, and *Al Odah v. United States*, No. 05-5064),[5] and
respondents have recently requested that the Court of Appeals permit additional briefing on the
effect of the *Hamdan* decision on this issue.[6]

Indeed, in light of the jurisdictional issues presented by the Act, Judge Collyer has stayed
"all action" in this case and denied all pending motions without prejudice pending resolution by
the D.C. Circuit of "serious questions concerning whether this Court retains jurisdiction to hear

---

[5] Oral argument before the D.C. Circuit was held on March 22, 2006.

[6] Petitioners in the cases involved in the appeals have opposed respondents' request for
supplemental briefing.

the above-captioned cases" after the Detainee Treatment Act of 2005.  *See* Order (dkt. no. 20).

Accordingly, while petitioner's request for relief should be denied, at a minimum, the stay of

proceedings in this case, including with respect to petitioner's request for relief, is appropriate

and should remain in effect pending the resolution of the effect of the Act by the Court of

Appeals.[7]

## II.    The Privilege Team Has Authority Under the Protective Order and Access Procedures To Decline Classification Review Of Materials Not Properly Sent Through Privileged Legal Mail Channels.

Even aside from the question of jurisdiction, petitioner's argument that the Privilege

Team must perform classification review of every document submitted by habeas counsel,

without exception, lacks merit.  *See* Petitioner's Motion to Compel at 3.  Petitioner seeks

extraordinarily broad relief that would effectively require the Privilege Team to perform

classification review of every document or piece of information submitted by habeas counsel,

regardless of its content, its relevance to the pending habeas litigation, or the source or manner

by which it was obtained.  Such an overreaching order is not warranted by the Protective Order

or the Access Procedures.

As explained above, consistent with the unique circumstances of these cases, which

involve aliens detained during wartime in an overseas military detention facility, the Protective

Order and Access Procedures impose two substantial limitations on the privileged

---

[7]  In addition, a stay of proceedings remains appropriate for the separate and independent reason that the substantive issues in these Guantanamo detainee habeas cases, including whether petitioners have constitutional due process rights and, if so, whether the Combatant Status Review Tribunals satisfy any such rights, remain under consideration by the Court of Appeals. The issues were briefed and argued before the Court of Appeals prior to enactment of the Detainee Treatment Act.

communications system that has been established for habeas counsel and petitioners.  First, the

Access Procedures state at the outset that they govern counsel access solely "for purposes of

litigating the cases in which the Order is issued."  *See* Access Procedures § I.  Second, privileged

communications are limited to "legal mail" between "counsel" and a properly represented

"detainee," as defined by section II.E of the Access Procedures.  In light of these limitations, the

Privilege Team unquestionably has the authority to refuse to perform a classification review of

non-legal communications as well as communications that are not between counsel and a

properly represented detainee.

       This conclusion is supported by the fact that detainees are not permitted to use the

privileged mail system for non-legal mail or for communications to or from others besides their

counsel.  The Access Procedures contemplate and require that such communications be routed

through the normal mail process at Guantanamo Bay, which includes content screening for

national security, intelligence, and physical and personnel security purposes.  *See id*. § IV.B.4.-5.

(counsel may not use legal mail channels as conduit for non-legal mail; non-legal mail subject to

review by military); *see also id.* § VI.C. (messages to others besides counsel to be processed as

non-legal mail); § IV.A.5. (non-legal mail communications to detainees to be sent to detainee

through normal, non-privileged mail channels).  Indeed, the Access Procedures state that any

such communications received by counsel through the privileged communications channels must

be returned to military personnel at Guantanamo for processing in accordance with standard

operating procedures for detainee non-legal mail.  *See id.* §§ IV.B.5, VI.C.  Thus, it would be an

abuse by counsel and petitioners of the privileged legal mail channels created "for purposes of

litigating the [habeas] cases" to permit detainees who are not represented by counsel and who are

not subject to the constraints of the counsel access procedures to use those channels for communications, especially where, as here, counsel seek Privilege Team review of such communications in order to make them public without the content and screening to which detainees' communications outside Guantanamo would normally be subject.[8]

### III.  The Privilege Team Correctly Refused To Conduct Classification Review Of The Two-Page Statement.

With respect to the specific two-page statement at issue in petitioner's motion, the Privilege Team correctly refused to review the document because it does not meet the criteria for privileged legal mail status under the Access Procedures.  According to petitioner's motion,[9] the statement at issue was written by a detainee at Guantanamo other than petitioner, who presumably gave the statement to petitioner (perhaps in violation of camp rules).  As discussed

---

[8] To require otherwise, and order the Privilege Team to conduct classification review of every document submitted by habeas counsel, could ultimately blur the well-established distinction in the Access Procedures between proper legal and non-legal mail.  Indeed, detainees would have little incentive to send non-legal mail or even communications from other detainees through non-legal channels given the knowledge that any document, whether non-legal or legal, presented to the Privilege Team would have to be reviewed and, if unclassified, could be distributed by counsel.  Respondents, of course, presume that habeas counsel act in good faith and would return any non-legal documents to Guantanamo, as they are required to do under the Access Procedures.  *See* Access Procedures §§ IV.B.5, VI.C.  However, the broader point is that if petitioner's proposed regime is accepted, habeas counsel would be the sole and final arbiter of whether a document is appropriate for consideration by the Privilege Team and, regardless of any objection to the contrary, the Privilege Team would be compelled to perform a classification review of that document.

[9] Respondents arguments in this section are drawn solely from the information provided in petitioner's motion.  Petitioner's have not submitted the two-page statement in support of their motion, perhaps due to a claim of privilege.  Further, undersigned counsel has not consulted with the Privilege Team about the two-page statement given nondisclosure constraints on the Privilege Team under the prohibition in the Protective Order and counsel access procedures regarding such contact.

-12-

above, the legal mail system is reserved only for communications between properly represented detainees and their counsel. The statement at issue in this case, however, does not involve such a communication. Instead, it involves a communication from a detainee other than petitioner to other persons and an attempt by petitioner to send counsel a communication from a third-party detainee who does not have a privileged relationship with petitioner's counsel. Moreover, it involves counsel's attempt to force a review of that communication outside of the content and screening procedures normally applicable to such unprivileged communications. This type of communication falls outside the scope of the privileged legal mail system established by the Access Procedures, which requires that communications by detainees who are not involved and represented by the counsel in a particular case must be sent and processed though the non-legal mail system. *See* Access Procedures § V.B.5 (non-legal correspondence included with legal mail must be returned to GTMO for processing according to the standard operating procedures for detainee non-legal mail). The fact that the two-page statement was attached to a presumably legitimate legal communication from petitioner to counsel is irrelevant. The statement at issue was written by a detainee who is not represented by this counsel and, therefore, does not qualify as legal mail under the Access Procedures.

Petitioner's attempt to require Privilege Team review of the statement at issue should not be countenanced because it essentially results in unrepresented third party detainees having the ability to circumvent, via conduit detainees, the review and screening mechanisms usually applicable to detainees' communications with others besides counsel who legitimately represent the detainee. Such a regime may encourage unrepresented detainees to smuggle non-privileged communications to conduit detainees, perhaps in violation of camp rules, and even prompt

unrepresented detainees to mark such non-legal materials as being subject to "attorney-client privilege" to avoid review by military authorities.  The Court should not authorize such system, particularly when severe consequences have already resulted from abuses of the privileged mail system.  *See* Respondents' Motion For Procedures Related To Review Of Certain Detainee Materials And Request For Expedited Briefing (dkt. no. 22) (describing abuse of legal mail by detainees in context of detainee suicides).  The Court should not condone a system that would essentially circumvent the requirements of the counsel access procedures that communications other than between detainees and counsel representing them must be sent through standard mail channels at Guantanamo.

    Instead of classification review by the Privilege Team, the proper way to resolve classification and potential public release of the two-page statement is to return it to Guantanamo for review in accordance with standard operating procedures for communications outside legal mail channels.  *See* Access Procedures § IV.B.5.  The statement itself is certainly not privileged attorney-client material.  The recipients include "The Supreme Court of the United States and to Whom It May Concern" and the unnamed detainee who wrote the statement has already provided the same information to military authorities at Guantanamo, thus any claim of privilege has been waived, assuming it ever existed.  *See* Petitioner's Motion to Compel, Declaration of William A. Wertheimer, Jr., Exhibit B*; see United State v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) (voluntary disclosure to a third party of purportedly privileged communications is waiver of privilege).  Consequently, petitioner's counsel will suffer no cognizable harm by following the governing Access Procedures and returning the document for

appropriate, non-privileged review.[10]

## IV.    The Court Should Appoint The Special Litigation Team Respond On Behalf Of The Privilege Team.

As discussed above, the instant opposition is submitted on behalf of respondents in the interest of proper administration of the protective prder and counsel access regime governing the Guantanamo detainee habeas cases.  In order for the Privilege Team's actions to be fairly and appropriately defended, however, if the Court lifts its stay to consider petitioner's motion, the Court also should authorize the Special Litigation Team, which represents the Privilege Team in other cases, to appear on behalf of the Privilege Team in this matter, as appropriate. Respondents respectfully submit that it would not be appropriate for the Court to order potential relief regarding petitioner's motion without full and appropriate representation of the Privilege Team before the Court and submission of a response on its behalf.  Magistrate Judge Kay has previously appointed a Special Litigation Team to represent the Privilege Team in the context of similar motions challenging specific Privilege Team action. S*ee Salahi v. Bush*, 05-CV-0569 (JR) (dkt. no. 49); *Al-Anazi v. Bush*, 05-CV-0345 (JDB) (dkt. no. 39).  Consequently, respondents request that an order consistent with the terms of Magistrate Judge Kay's prior

---

[10] Petitioner's counsel, of course, may access and review the two-page statement at the secure work facility for habeas counsel while the document remains presumptively classified. Petitioner's counsel likewise would suffer no prejudice because, presumably, petitioner can relate to counsel what he has learned from the other detainee to the extent it is relevant to the case.  The harms discussed above of putting a communication from a detainee who is not represented by counsel in petitioner's case though the review process reserved only for communications between habeas counsel and a represented detainee will be avoided, however. To the extent petitioner argues that the conduct in this case is an attempt to obtain exculpatory statements from other detainees, procedures for obtaining such statements should await development of further procedures regarding litigation of the merits of this case, if necessary; counsel, however, should not be permitted to abuse the legal mail system for such purposes.

orders should be issued in this case, permitting the Special Litigation Team (and the Privilege

Team) renewed access to the two-page statement at issue in petitioner's motion and the filing of

an appropriate submission on the matter.[11]

<b><u>CONCLUSION</u></b>

For the reasons stated above, petitioner's motion to compel Privilege Team compliance

with the Amended Protective Order should be denied.


Dated: July 13, 2006                           Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

    _/s/_ Andrew I. Warden
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
ANDREW I. WARDEN (IN Bar No. 23840-49)
NICHOLAS J. PATTERSON
EDWARD H. WHITE
MARC A. PEREZ
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530

Tel:  (202) 514-4107

---

[11] The statement was not attached as an exhibit to petitioner's motion and access to the document by Special Litigation Team will be required for full consideration of petitioner's motion.

-16-

Fax:  (202) 616-8470

Attorneys for Respondents