IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
JAWAD JABBAR SADKHAN,          )
                               )
            Petitioner,        )
                               )
      v.                       )     Civil Action No. 05-CV-1487 (RMC) (AK)
                               )
GEORGE W. BUSH,                )
      President of the United States, )
      et al.,                  )
                               )
            Respondents.       )
_____)
```

**PETITIONER'S REPLY MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL PRIVILEGE TEAM
COMPLIANCE WITH AMENDED PROTECTIVE ORDER
AND MOTION TO LIFT STAY**

**I.    The Detainee Treatment Act Does Not Apply**

Incredibly the government argues that *Hamdan v. Rumsfeld*, 548 U.S. ___, 2006 WL 1764793 supports its argument that the Detainee Treatment Act of 2005 (DTA), Pub. L. 109-148, 119 Stat. 2680 vests exclusive jurisdiction over this action in the D.C. Circuit. Government brief, pages 7-10. *Hamdan* is to the contrary.[1] And, in any event, the government should be judicially estopped from claiming otherwise.

In *Hamdan* the Supreme Court held "that §1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." Slip op. at 20, n. 15. Sadkhan filed his petition on 23 August 2005. (Docket number 1.) The DTA was enacted on 30 December

---

[1] For this reason petitioner also moves for this Court to lift the stay it issued at docket number 20 "pending the jurisdictional ruling of the District of Columbia Circuit." The circuit's jurisdictional ruling will follow *Hamdan.*

2005. Section1005(e)(1) does not repeal jurisdiction over Sadkhan's habeas claim.

The only other possibly relevant jurisdiction - stripping provision of the DTA is §1005(e)(2).[2] By its terms and as recognized by the Supreme Court in *Hamdan*, subsection (e)(2) purports to grant exclusive jurisdiction only over actions to "determine the validity of any final decision" of a Combatant Status Review Tribunal (CSRT)[3] that an alien is properly detained as an enemy combatant. *Hamdan*, slip op. at 18. Thus, a petitioner who is not contesting any final decision of a CSRT does not fall within the scope of subsection (e)(2). Sadkhan does not challenge a CSRT determination in any of his 17 causes of action. Nor does he seek any relief relating to a CSRT determination. Rather he denies the legitimacy of the CSRT process in its entirety. (Docket number 7.)

Moreover, the Supreme Court in *Hamdan* rejected the government's argument that §1005(e)(2) creates an exclusive review mechanism that precludes a petitioner determined by a CSRT to be an enemy combatant from seeking habeas relief in the district court. Specifically, the Supreme Court noted:

> There is nothing absurd about a scheme under which pending habeas actions -- particularly those, like this one, that challenge the very legitimacy of the tribunals whose judgments Congress would like to have reviewed -- are preserved, and more routine challenges to final

---

[2] The government has not instituted any military commission proceedings against Sadkhan. Therefore, §1105(e)(3) is inapplicable.

[3] On 7 July 2004, nine days after the Supreme Court decided in *Rasul v. Bush,* 542 U.S. 466 (2004) that this Court had jurisdiction to consider challenges to the legality of detentions of foreign nationals captured abroad and incarcerated at Guantanamo, the Department of Defense issued an order creating the Combatant Status Review Tribunal's process under which panels of three military officers reviewed detainees' designations as enemy combatants. Memorandum from Deputy Secretary of Defense Paul Wolfowitz re: Order Establishing Combatant Status Review Tribunal available at http://www.defenselink.mil/news/Jul2004/d20040707review.pdf.

> decisions rendered by those tribunals are carefully channeled to a particular court and through a particular lens of review.

Slip. op. at 19. Justice Scalia, in dissent, agreed:

> By drawing a negative inference *a la Lindh*, the Court supplants this exclusive-review mechanism with a dual-review mechanism for petitioners who were expeditious enough to file applications challenging the CSRTs or military commissions before December 30, 2005.

Slip op. at 11.

That §1105(e)(2) applies only in those limited cases in which a prisoner opposes only the validity of his CSRT decision is demonstrated further by the broad language of § 1005(e)(1), which provides that "no court, justice or judge shall have jurisdiction to hear or consider ... an application for a writ of habeas corpus."  The government's broad reading of § 1005(e)(2) would render § 1005(e)(1) superfluous, in violation of well-established principles of statutory construction. *Asiana Airlines v. F.A.A.,* 134 F.3d 393, 398 (D.C. Cir. 1998) ("A cardinal principle of interpretation requires us to construe a statute so that no provision is rendered inoperative or superfluous, void or insignificant.").

Finally, the government makes its "no jurisdiction" argument here while at the same time it is moving to have this Court assert jurisdiction over this and the other Guantanamo detainee cases in order to seek its aid in attempting to legitimize its abrogation of the attorney-client privilege as part of its "investigation" of the recent suicides at Guantanamo.  See the government's "Motion for Procedures Related to Review of Certain Detainee Materials and Request for Expedited Briefing" at docket number 22 as well as Sadkhan's opposition thereto and motion to show cause why respondents should not be held in contempt being filed simultaneously herewith.  The principle of

judicial estoppel prevents the government from having it both ways.  See, for example, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding that litigant was barred from asserting a position contrary to one it had taken in earlier litigation "to protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment.")  The government should not be allowed to seek this Court's aid on one issue while at the same time claiming that this Court has no jurisdiction over this matter.

II.     **The Privilege Team Has the Authority Under the Protective Order to Review the Exculpatory Statement Petitioner Seeks to Provide His Attorney**

The government begins by arguing that the Privilege Team is empowered to police the terms of the protective order and decide for itself whether a document should or should not have been submitted for review. Government brief, pages 10-12. Sadkhan in reply relies on the arguments petitioners made in *Al-Anazi v. Bush*, No. 1:05-cv-00345 at docket numbers 40-1 and 44 and at oral argument.

The government's argument that the Privilege Team correctly refused to conduct a declassification review of the two page statement at issue is without merit.  Government brief, pages 12-15.  Indeed, it does not confront the actual issue presented until the last sentence of a footnote that appears at the end of this section of its brief: "[T]o the extent petitioner argues that the conduct in this case is an attempt to obtain exculpatory statements from other detainees, procedures for obtaining such statements should await development of further procedures regarding litigation on the merits of this case, if necessary; counsel, however, should not be permitted to abuse the legal mail system for such purposes." Government brief, page 15, n. 10.

This is, of course, petitioner's argument.  The government implicitly acknowledges its merit

by suggesting that "further procedures" should be developed so that counsel can at some undetermined future date obtain "such statements." The mind set that would call for further procedures to resolve such a simple issue whose resolution is so obvious would if adopted by the Court put us into the next millennium before final resolution of this case which not coincidentally is exactly what the government would like. Petitioner, having been illegally detained by the government for four and a half years, has a different interest. Any competent court can and should interpret the term "legal mail" in the Amended Protective Order to include an exculpatory statement submitted by a client to his lawyer.

### III. The Appearance of the Special Litigation Team

The government argues that this Court should authorize the Special Litigation Team to appear on behalf of the Privilege Team on this issue. Government brief, pages 15-16. Petitioner does not object as long as this does not cause a delay in the final resolution of this matter. He would, however, note both that the Special Litigation Team has had access to this statement and that he has accepted its characterization that the statement as "two pages allegedly from another detainee confessing to lying about counsel's client." There is no need to over-complicate this matter. The statement is what it is.

        Respectfully submitted,

        By:   /s/ William A. Wertheimer, Jr.
        William A. Wertheimer, Jr.
        Counsel for petitioner Jawad Jabbar Sadkhan
        30515 Timberbrook Lane
        Bingham Farms, MI 48025
        (248) 644-9200

Dated: 20 July 2006