FILED WITH THE
COURT SECURITY OFFICER
CSO: Miguel Ferrer
DATE: 5/3/07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAWAD JABBAR SADKHAN, | ) | PREVIOUSLY FILED WITH CSO |
| | ) | AND CLEARED FOR PUBLIC FILING |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | Case No. 1:05-CV-1487 RMC |
| | ) | |
| GEORGE W. BUSH, et al., | ) | |
| | ) | |
| *Respondents.* | ) | |

### PETITIONER'S (1) OPPOSITION TO MOTION TO DISMISS, (2) MOTION FOR A STAY-AND-ABEY ORDER AND (3) NOTICE OF INTENTION TO FILE A PETITION UNDER THE DETAINEE TREATMENT ACT

Petitioner Jawad Jabbar Sadkhan ("Petitioner"), through counsel, opposes Respondents' Motion to Dismiss. On November 4, 2005, on the Government's motions (Dkts. 2 & 9), Your Honor stayed these proceedings (Dkt. 13) pending appellate review in the related *In re Guantanamo Bay Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005) and *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). That stay has been in effect for 18 months.

Petitioner asks that Your Honor, in the interests of justice, keep the stay order in place pending Petitioner's exhaustion of remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat 2680 (2005) ("DTA"), and hold this action in abeyance pending Petitioner's exhaustion of those remedies and the resolution in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), or the Supreme Court's resolution of the same jurisdictional issue as presented in this case or in some other case in which this issue is presented. Petitioner further hereby notifies this Court of his intent to file a petition under the DTA in the District of Columbia Circuit Court of Appeals within 14 days.

Respondents' Motion should be entered and continued, or denied. Respondents' Motion is based on an inaccurate reading of the effect of the Court of Appeal's split decision in *Boumediene v. Bush*, and the split commentary from the Supreme Court Justices on the denial of certiorari in that case. 476 F.3d 981 (D.C.Cir.), 127 S.Ct. 1478 (2007). In any event, Respondents' jurisdictional argument only applies to "frivolous" claims, which is clearly not the case here: As established by the April 2, 2007 split *Boumediene* opinions in the Supreme Court, and the important questions deferred pending exhaustion, Petitioner's claim to habeas jurisdiction is substantial, especially given that this Court clearly had jurisdiction under *Rasul v. Bush*, 542 U.S. 466 (2004) at the time Petitioner filed his habeas corpus petition, *pro se*, on July 28, 2005. (*See* Dkt. 1.)

Since that time, Respondents now claim that statutes enacted after the petition was filed in this case deprive the District Courts of jurisdiction, a position Petitioner contests based on an array of factual and legal arguments. Respondents now request that all orders in this matter -- including this Court's protective order providing counsel access to Petitioner -- should be vacated, and his petition should be dismissed, without the opportunity to persuade this Court that his case is viable and to make a record for appellate and Supreme Court review. Respondents totally ignore the fact that, as stated above, they too have requested a stay from this Court -- just as Petitioners are doing now -- pending the outcome of related appeals. (Dkts. 2, 9.)

As we set forth below, Respondents' position is wrong for six reasons: 1) the best procedure for addressing a pending habeas corpus petition while remedies are exhausted is for the District Court to stay the proceedings and hold them in abeyance pending exhaustion, *Rhines v. Weber*, 544 U.S. 269 (2005); 2) *Boumediene v. Bush*, 127 S.Ct. 1478 (2007), is not final nor is it dispositive given the statements of Justices Stevens and Kennedy regarding the need to exhaust

remedies before the Court will consider granting certiorari; 3) until the Supreme Court rules on the jurisdictional questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition[,]" *United States v. United Mine Workers*, 330 U.S. 258, 290-91 (1947), which is particularly urgent here because the protective order in this case -- which Respondents seek to vacate along with the rest of this action -- is currently counsel's sole means of communicating with their client, and no other mechanism for such communication currently exists absent this Court's protective order, 4) the authority relied upon by Respondents in support of their jurisdiction-based dismissal is limited to *frivolous* jurisdictional claims only, and does not encompass the profound and meritorious constitutional issues relating to statutes that purport to divest federal court jurisdiction and disenfranchise an easily identifiable group of Muslims from access to the courts; 5) the stay-and-abey procedure is especially appropriate in the context of the need for orders by the District Courts to "ensure that the office and purposes of the writ are not compromised;" and 6) Petitioner is not bound by the record established to date in *Boumediene* because his case presents unique facts that give rise to certain constitutional issues not affecting all detainees.

I. **Because Exhaustion Of Remedies Is Available To The Present Petitioner, The District Courts Have Discretion To Enter Stay-And-Abey Orders.**

On February 20, 2007, a split panel of the Court of Appeals for the D. C. Circuit decided combined cases involving non-U.S. nationals detained at Guantánamo. The majority concluded that post-*Rasul* statutes deprived district courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in that case declined to seek review directly with the Court of Appeals under the DTA, the Court of Appeals majority found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. On April 2, 2007, the Supreme Court denied certiorari, with both

a three-Justice dissent and a statement from two other justices commenting upon the denial of certiorari. *Boumediene v. Bush*, 127 S.Ct. 1478 (2007).

The statement of Justices Kennedy and Stevens found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

Given Petitioner's need to now exhaust his remedies under the DTA, Your Honor should continue the stay in this the proceedings pending completion of the Petitioner's DTA case in the Court of Appeals. In *Rhines* the Supreme Court explicitly approved the stay-and-abey procedure in an analogous situation, where the stay would prevent prejudice to a petitioner. *See* 544 U.S. at 278. In *Rhines*, the prisoner filed a "mixed" habeas petition in federal court. The petition in *Rhines* contained both claims exhausted through the state court system as well as unexhausted claims. Dismissal by the district court would have deprived the *Rhines* petitioner from federal review. Before petitioner could exhaust remedies and re-file the petition, the one-year statute of limitations would have expired. Given the major procedural risks of a dismissal order, the Supreme Court found that district courts have discretion to stay the federal habeas corpus case and hold it in abeyance for a reasonable time while available state remedies are exhausted.

In *Rhines*, the Supreme Court found three preconditions that mandate a stay-and-abey

approach. In the absence of intentional dilatory tactics by the petitioner, "it is likely to be an abuse of discretion for a district court to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

The conditions under which failure to stay-and-abey would constitute an abuse of discretion—no deliberate delay, good cause, and potentially meritorious claims—are abundantly present in this case. In *Boumediene*, the Court of Appeals held, on a 2-1 vote, that this Court lacked jurisdiction, and the Supreme Court was divided in declining to grant certiorari. The legal issues arising from this and other detainee cases are extraordinary, unsettled and highly unique. Petitioner diligently requested relief in this Court as soon as he learned that this remedy was available to him in July 2005. Since then, a great state of uncertainty has existed over the proper legal path that petitioners similarly situated should pursue. In fact, until now -- with the Court of Appeals holding that this Court lacks jurisdiction and with Justices Kennedy and Stevens requiring exhaustion of remedies before the Supreme Court will review that issue -- no clear legal path for seeking alternative remedies existed. In fact, the DTA procedure was not even available when Petitioner filed his habeas petition in this Court in July 2005.

After enactment of the DTA in December 2005, significant litigation ensued about its constitutionality. Petitioner will file his DTA petition within 14 days, only weeks after the Supreme Court issued that direction. Unlike delays in some death penalty cases, which may work to the benefit of the person on death row, every day of delay prejudices Petitioner.[1]

---

[1] In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

There is also good cause for the failure to exhaust until now. Mr. Sadkhan filed his action *pro se* on July 28, 2005. The potential DTA remedy did not exist until well after the habeas corpus petition in this action was filed and the DTA did not purport to provide the habeas relief to which Petitioner was entitled. In *Pace*, the Supreme Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face even greater complexities. The questions left open in the Supreme Court's decision in *Rasul*, which established a right to proceed under 28 U.S.C. § 2241 at the time Petitioner filed this action and the subsequent DTA and Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006) ("MCA"), created substantial and complex uncertainties. Petitioner did not even have the potential DTA remedy prior to October 2006, because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

Respondents attempt to distinguish *Rhines* fails. The procedural obstacles that dismissal would create under 28 U.S.C. § 2254 are no different—although perhaps more profound—than those facing detainees in Guantánamo, cut off from contact with their lawyers. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

Petitioner's counsel respectfully requests that Your Honor enter the stay and continue this matter for six months. At that time (or at any other time requested by the Court), counsel will appear and apprise Your Honor on the status of litigation affecting Petitioner, which may provide clearer direction on how to proceed at the District Court level. On the Government's Motion, Your Honor previously stayed these proceedings in order to allow the Court of Appeals and the Supreme Court the opportunity to rule on important issues of law. In the interests of justice --

and to afford counsel the opportunity to continue to communicate with and meet with their client -- we ask that the Court please maintain the stay order.

II.     *Boumediene* Is Not Final Or Binding Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Petitioner And Are Being Exercised By Petitioner.

The Respondents' reliance on *Boumediene* as a ground for dismissal of this action at this time is wrong for several reasons. *First*, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S.Ct. at 1478 (Stevens and Kennedy, JJ)(citing *Rasul*, 542 U.S. at 480-81). *Second*, Justice Stevens' and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present his arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

*Boumediene* does not control these cases because, unlike the petitioners in that case, Petitioner is exhausting his remedies under the DTA. Petitioner's counsel have completed substantial work already on Petitioner's DTA Petition, and will file the Petition with the United States Court of Appeals for the District of Columbia Circuit within 14 days.

By contrast, the Circuit Court in *Boumediene* expressly predicated the dismissal order on the petitioners' *failure* to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. As noted above, Justices Stevens and Kennedy explicitly explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*.

A.  **The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus Proceedings.**

Respondents' claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S.Ct. at 1478. As the three dissenting Justices opined, and as did Judge Rogers in dissenting from the Circuit Court's opinion, the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. [cites.] With the addition of Justices Stevens and Kennedy's statement, the underlying Petition in this case should be fully considered, after exhaustion, upon Petitioner's unique facts and legal arguments. The denial of certiorari in the *Boumediene* case does not finally resolve the jurisdictional questions in Petitioner's case.

B.  **The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until The Adequacy Of The DTA Remedy Becomes Known.**

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. See Swain v. Pressley, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus.") Justice Stevens and Kennedy's statement on certiorari clearly stated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Supreme Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S.Ct. at 1478 (statement of Stevens & Kennedy, J.J.) Further, Justices Stevens and Kennedy stated that, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id.* By maintaining the present case in the District Court, Your Honor will be in a position to "act promptly to ensure

that the office and purposes of the writ of habeas corpus are not compromised." *Id.* The exhaustion model from the *Boumediene* litigation thus requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

### III. The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.

In the statement accompanying the *Boumediene* order denying certiorari, Justices Stevens and Kennedy stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S.Ct. 1478 (2007) The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while a question is under consideration, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Court of Appeals has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure Petitioner is not prejudiced in his ability to litigate his DTA action, and to preserve potential remedies before this Court.

The denial of certiorari in *Boumediene* leaves unanswered questions necessary to deciding issues in Petitioner's case, including the following: (1) Does the DTA provide a forum

for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? (2) If not, has the writ been unconstitutionally suspended or eliminated? And, (3) Are the MCA and the DTA inapplicable given Petitioner's jurisdictional arguments regarding the absence of initial military jurisdiction, which would foreclose a Combatant Status Review Tribunal from constituting a competent tribunal to render any decision regarding Petitioner?

The motion to dismiss should be denied -- or at a minimum, held in abeyance -- because the Court has insufficient information to answer a number of questions that the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to Petitioner, there must be an adequate record for the Court of Appeals appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that this action remain in place until after Petitioner has exhausted his DTA procedures. During that process, Respondents should be foreclosed from prejudicing Petitioner's ability to litigate these questions in this Court and the Court of Appeals.

This course of action will work no prejudice on Respondents. It will, however, save Petitioner the uncertainty and delay accompanying attempts to "resurrect" his dismissed habeas claim following exhaustion of his DTA remedies. Petitioner is concerned, for example, that if his habeas petition is dismissed, Respondents will argue in later court hearings that Petitioner may seek review only of the Court of Appeals' DTA determination. The DTA, in turn, allows challenges only to specified aspects of final decisions of the Combatant Status Review Tribunals ("CSRTs"). Under these circumstances, the most economical and efficient way to proceed is for this Court to stay rather than dismiss this action.

IV. **Respondents' Principal Authority Only Applies To Frivolous Claims, Not The Substantial Issues Addressed In The Present Case.**

Respondents place primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question. Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court.

The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)). Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)(emphasis added)). The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous: the courts have been split on the constitutional issues at each level of the Guantanamo litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our

Constitution. The main case upon which Respondents rely establishes that the Motion to Dismiss should be denied while remedies are exhausted.

Ironically, Respondents' own Motion recognizes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed. In footnote 15, Respondents point out that counsel agreed to certain obligations pursuant to the protective order -- maintaining the secrecy of classified information, for example -- that survive dismissal, citing to the case upon which Petitioner relies – *United States v. United Mine Workers*, 330 U.S. 258 (1947)(Motion at 8-9). As argued *supra* at __, *United Mine Workers* establishes that Your Honor has the authority throughout this litigation to maintain the status quo by enforcing the protective order and otherwise ensuring that "the office and purposes of the writ of habeas corpus are not compromised."

This Court retains the power to decide its own jurisdiction in the first instance. *See Kircher*, 126 S. Ct. at 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined on appeal, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*. Then, if the case is not mooted by the DTA proceedings, this Court should provide Petitioner the opportunity to make his record, present his claim, and receive a decision based on the facts and law of his individual case.

V.  **The Protective and other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The dismissal of the District Court proceeding and its attendant protective order (Dkt. 13), would constitute exactly the type of prejudice to Petitioner's ability to litigate that Justices Kennedy and Stevens instructed that the courts should guard against. In their opening brief, Respondents -- incredibly -- contend that dismissal of this action and its attendant protective


order will not result in denial of counsel access to detainee clients. (Mot. to Dismiss, at 7-10.) Respondents state that Petitioner can seek a new protective order in the Court of Appeals after filing a DTA petition, and note that Respondents express willingness to agree to such an order (although on substantially narrower terms than the order now in force in this matter).

Respondents' position ignores the plain realities. If this Court dismisses this case and its attendant protective order, counsel will have no means of communicating with Petitioner for an indefinite time. There is no assurance whatsoever when the Court of Appeals will enter a new protective order to restore such communications. Respondents' position is entirely dependent upon the Court of Appeals' willingness to issue a protective order similar in form and function to the order in this case. Further, there is no guarantee whatsoever that the Court of Appeals -- which is about to receive scores of DTA petitions -- will have the time to immediately address Petitioner's motion for a protective order in that Court. Additionally, Petitioner would certainly object to the narrower protective order proposed by Respondents in their Motion. (Mot., at 10.) For example, Respondents propose limiting counsel visits to three and permitting military authorities to read attorney-client mail. Litigation will result, adding still more delay to the issuance of an order.

Delay would work substantial prejudice on Petitioner. Without the protective order, Counsel cannot communicate with Petitioner about his case in any way. They will not be able to discuss his DTA petition with him, or develop facts in support of that petition with him. Dismissal of the protective order would sever the attorney-client relationship, and corrode bonds of trust that have developed -- slowly and only after significant work over long periods of time -- between counsel and Petitioner who are from different parts of the world and speak different languages. (Decl. of Matthew R. Devine, attached hereto as Ex. A, ¶¶ 8-10.)

After Petitioner filed his habeas petition *pro se* in July 2005, William Wertheimer -- a solo practitioner from Michigan -- filed an appearance on behalf of Petitioner and an amended habeas petition. (Dkts. 1, 4 & 7, respectively.) Mr. Wertheimer undertook this representation on a *pro bono* basis at great sacrifice to his law practice, both in time and money, and visited Petitioner at Guantanamo under the terms of the protective order in January 2006 for the first time. (Ex. A, ¶¶ 4, 6.) Mr. Wertheimer brought in additional counsel to assist him on the matter -- Jeffrey D. Colman and Matthew R. Devine of Jenner & Block LLP in Chicago, also on a *pro bono* basis. (Dkts. 42, 43.)

Together, Messrs. Wertheimer, Colman and Devine visited Petitioner in January 2007, with Messrs. Colman and Devine making another trip in April 2007. (Ex. A, ¶ 7.) In total, Petitioner's three counsel have spent more than 100 hours on the telephone with Petitioner's family, meeting with petitioner, writing to Petitioner and his family and working with Arabic-speaking translators to translate the documents into English. (Ex. A, ¶ 8.) After much time, these efforts have borne fruit; counsel have build a meaningful and workable attorney-client relationship with Petitioner. (Ex. A, ¶ 8.)

Dismissal at this time could end that. Petitioner's counsel have promised Petitioner on numerous occasions to visit Petitioner a minimum of four times per year and to write him letters every two weeks. (Ex. A, ¶ 10.) Mr. Devine intends to visit Petitioner in July 2007, and Messrs. Devine and Colman plan to return to Guantanamo in October 2007. (Ex. A, ¶ 10.) Since January 2007, Petitioner's counsel have sent eight letters, fulfilling their promise to Petitioner to send one every two weeks. (Ex. A, ¶ 10.) Petitioner himself has sent counsel numerous letters during that time. The protective order is the *sine qua non* of all of these communications. (Ex. A, ¶ 10.) If the Protective Order -- the *only* vehicle permitting the communication between

counsel and Petitioner -- is gone, Petitioner will almost certainly view counsel's sudden absence -- and the attendant string of missed visits and letters -- as the broken promises of counsel he had come to trust. (Ex. A, ¶ 11.) Petitioner is unlikely to appreciate any legal nuances that might explain away the sudden disappearance of his attorneys. (Ex. A, ¶ 11.) (In fact, Petitioner's counsel would not likely even have a chance to try to explain it to him.) Petitioner will likely count it as another in a long line of betrayals, and yet another condemnation to isolation and hopelessness.

Respondents complain that the protective order they agreed to is onerous (Mot. at 9-11). This is baseless and insulting to counsel. Messrs. Wertheimer, Colman and Devine have endeavored diligently to comply with the terms of the protective order and the Respondents have never asserted any violations against us -- nor could they. (Ex. A, ¶ 13.) This Court has been supervising the protective order for almost two years. If difficulties arose beyond the powers of the parties to work out, the protective order included powerful mechanisms for Respondents to exhaust, up to and including contempt and criminal prosecution. Respondents' failure to exhaust the available remedies should foreclose action based on Respondents' complaints.

This Court's orders on access to counsel should remain intact pending exhaustion of DTA remedies.

### VI. *Boumediene* Does Not Establish The Record To Which Petitioner Should Be Bound Because Petitioner Is Exhausting Available Remedies, And Other Legal Theories May Be Available On The Facts Of His Case.

Respondents' request for dismissal of this case fails to recognize the unique factual setting and resulting legal issues faced by Petitioner. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioner in this action. See *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are

not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting stare decisis effect of cases where constitutional issue was not raised or resolved). The most basic distinction from *Boumediene* is that the scope and efficacy of the DTA remedy is being tested by Petitioner, and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the case unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA must be determined in light of the post-DTA litigation about to ensue and address this Petitioner's unique claims.

## CONCLUSION

Petitioner's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioner has not had his individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated. Under *United Mine Workers*, the Court has "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition." Under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay this action and hold it in abeyance for a reasonable time for the DTA actions to be litigated.

For the foregoing reasons, this Court should deny Respondent's motion to dismiss (or

hold a ruling in abeyance) pending Petitioner's exhaustion of his DTA remedies in the Court of Appeals, and hold this action in abeyance pending Petitioner's exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue in *Hamdan* or *Ali* of whether the MCA constitutionally stripped Guantanamo prisoners of their habeas rights, or resolution by the Supreme Court of a renewed petition for certiorari seeking review of *Boumediene*.

Respectfully submitted,

_/s/ Jeffrey D. Colman_    Dated: May 3, 2007

Jeffrey D. Colman
   Illinois Bar No. 491160
Matthew R. Devine
   Illinois Bar No. 6282744
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611
Tel: (312) 923-2940
Fax: (312) 840-7340
Email: jcolman@jenner.com

William A. Wertheimer, Jr.
LAW OFFICES OF WILLIAM A. WERTHEIMER, JR.
30515 Timberbrook Lane
Bingham Farms, Michigan 48025
T: (248) 644-9200
Email: wert@tir.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, I filed and served the foregoing Petitioner's (1) Opposition to Motion to Dismiss, (2) Motion for a Stay-And-Abey Order and (3) Notice of Intention to File a Petition Under the Detainee Treatment Act with the Privilege Review Team, pursuant to the terms of the Protective Order entered in the above-captioned matter, by causing an original and four copies to be hand-delivered to the following Court Security Officers:

> Jennifer Campbell
> Erin Hogarty
> Litigation Security Section
> United States Department of Justice
> 20 Massachusetts Avenue NW
> Suite 530
> Washington, D.C. 20530

I further certify that, upon receiving clearance, one copy will be sent to each of the following counsel of record by United States mail:

> Judry Laeb Subar
> United States Department of Justice
> 20 Massachusetts Avenue NW
> Washington, D.C. 20530
>
> Terry Marcus Henry
> United States Department of Justice
> 20 Massachusetts Avenue NW
> Washington, D.C. 20044

> Matthew R. Devine
> JENNER & BLOCK LLP
> 330 North Wabash Avenue
> Chicago, Illinois 60611
> T: (312) 840-7415
> F: (312) 840-7515
> Email: mdevine@jenner.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAWAD JABBAR SADKHAN, ) | |
| ) | |
| *Petitioner,* ) | |
| ) | |
| v. ) | Case No. 1:05-CV-1487 RMC |
| ) | |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| *Respondents.* ) | |
| ) | |

**[PROPOSED] ORDER**

The Court has considered Petitioner's (1) Opposition to Motion to Dismiss, (2) Motion for a Stay-and-Abey Order and (3) Notice of Intention to File a Petition under the Detainee Treatment Act and HEREBY ORDERS that this action shall be stayed and held in abeyance pending Petitioners' exhaustion of remedies, and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) or the Supreme Court's resolution on the merits of the same jurisdictional issue as presented in a pending original habeas petition in *In re Ali*, No. 06-1194.

DATED:_____                    _____
                                           UNITED STATES DISTRICT JUDGE