



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JAWAD KABBAR SADKHAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-1487 (RMC) |
| ) | |
| BARACK H. OBAMA, *et al.*, ) | |
| ) | |
| Respondents ) | |

## MEMORANDUM OPINION

Jawad Kabbar Sadkhan Al-Sahlani, a detainee at Guantanamo Bay, seeks additional

discovery from the United States beyond what is required by the Case Management Order, as

amended, issued by Judge Thomas F. Hogan (the "CMO"). Counsel state that Mr. Sadkhan is a

Shi'ite Iraqi who has been detained for over seven years because other detainees told interrogators

that he served as a Taliban leader in Northern Afghanistan. Mr. Sadkhan himself has repeatedly

denied the allegations against him on all but one occasion. His discovery requests will be addressed

in turn.

## I. LEGAL STANDARDS

Discovery requests in these Guantanamo Bay Detainee Litigation proceedings are

governed principally by Sections I.D.1, I.E.1 and I.E.2 of the CMO. Section I.D.1 of the CMO

states:

> The government shall disclose to the petitioner all reasonably available
> evidence in its possession that tends materially to undermine the
> information presented to support the government's justification for
> detaining the petitioner. . . . In this context, the term "reasonably
> available evidence" means evidence contained in any information

reviewed by attorneys preparing factual returns for all detainees; it is not limited to evidence discovered by the attorneys preparing the factual return for the petitioner. The term also includes any other evidence the government discovers while litigating habeas corpus petitions filed by detainees at Guantanamo Bay. . . . [D]isclosure [of such exculpatory evidence] shall occur within 14 days of the date on which the government files the factual return. By the date on which disclosure is to occur under this paragraph, the government shall file a notice certifying either that it has disclosed the exculpatory evidence or that it does not possess any exculpatory evidence.[1]

Section I.E.1 states:

If requested by the petitioner, the government shall disclose to the petitioner (1) any documents and objects in the government's possession that the government relies on to justify detention; (2) all statements, in whatever form, made or adopted by the petitioner that the government relies on to justify detention; and (3) information about the circumstances in which such statements of the petitioner were made or adopted. . . . [R]equested disclosure shall occur within 14 days of the date on which the government files the factual return or within 14 days of the date on which the petitioner requests disclosure, whichever is later.

Section I.E.2 states:

The Merits Judge may, for good cause shown, permit the petitioner to obtain limited discovery beyond that described in [Section I.E.1]. . . . Discovery requests shall be presented by written motion to the Merits Judge and (1) be narrowly tailored, not open-ended; (2) specify the discovery sought; (3) explain why the request, if granted, is likely to produce evidence that demonstrates that the petitioner's detention is unlawful . . . ; and (4) explain why the requested discovery will enable the petitioner to rebut the factual basis for his detention without unfairly disrupting or unduly burdening the government. . . . The Merits Judge will set the date by which all discovery must be completed.

---

[1] The Government filed a motion for extension of time, from December 30, 2008 to January 30, 2008 to produce exculpatory evidence and to file its certification of compliance with Section I.D.1. To date, the Government has not yet filed a certification regarding exculpatory evidence.

### III. ANALYSIS

Mr. Sadkhan's counsel argue that the Government has not completed the mandatory production of exculpatory evidence required under Section I.D.1 or the production of evidence they requested under Section I.E.1. Mr. Sadkhan, through counsel, therefore moves the Court to compel the Government to comply with Sections I.D.1 and I.E.1 of the CMO, or in the alternative, seeks permission to obtain this discovery pursuant to Section I.E.2. Counsel also seek production of Mr. Sadkhan's Medical Records pursuant to Section I.E.2 of the CMO.

**A.     Discovery Requests pursuant to Section I.D.1 and/or I.E.2 of the CMO**

1.     ██████████████████████████████████████

The Government has produced the questions, answers and test result but objects to producing the technical examiner's report on the basis that "it is very difficult to understand how a technical report will help Petitioner materially undermine the basis for his detention" and, thus, it is irrelevant. Resp'ts' Opp'n at 9-10. The Court disagrees. The full report may well assist Mr. Sadkhan in supporting his own credibility which, in a he said/she said dispute, could be critical. Inasmuch as the Government has possession of the report – having produced a redacted form in separate litigation under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 – there is no particular burden in producing it.

2.     *Any and all statements made by Mr. Sadkhan, including all interrogation memoranda, notes and reports.*

Petitioner's counsel argue that they believe he has made hundreds of statements to various interrogators at Guantanamo Bay over the years, that he has consistently denied the allegations against him, and that these consistent statements "are exculpatory and demonstrate the

-3-

unlawfulness of his detention." Pet'r's Mem. at 6. They add that the Government will not be unduly burdened, despite the fact that the "'file is very lengthy,'" id., because it appears that someone reviewed it as recently as January 2008. The Government protests that the request for "any and all" statements made by him, without qualification, is overly-broad, unduly burdensome for the Government, and the kind of open-ended request that is specifically prohibited by the CMO. Resp'ts' Opp'n at 10. The Government also chides Petitioner's counsel for failing to "identify the particular documents or statements for which discovery is necessary." Id.

The Court agrees that a request for "any and all" statements is overbroad and would amount to a fishing expedition for exculpatory evidence. On the other hand, Mr. Sadkhan has been held for a lengthy period and apparently questioned on numerous occasions. It would be entirely unreasonable to expect him to remember what he might have said during any particular interview to identify with the specificity the Government suggests. The request must be put into a more reasonable perspective.

There is apparently a file on Mr. Sadkhan at Guantanamo Bay that contains records of his statements. Copying and classifying them – if they amount to hundreds as counsel indicates – would be unduly burdensome for the Government with little accomplished for Mr. Sadkhan, especially since the record before the Court already makes it clear that he has consistently asserted his innocence. But the Court is unclear as to who for the Government actually reviewed said large file, determined what statements were of value to the Government and which contained exculpatory information, and decided that the rest could remain in the file. The Court will order the Government to provide these details (names of agents are not required but rank and agency will be necessary) so that it can more properly determine whether additional production must be made.

3.  *Full and complete documents, not excerpts, of any and all documents produced by Respondents.*

Petitioner's counsel seek full and complete documents, not merely excerpts, of any and all documents produced by Respondents. Petitioner has set forth no arguments in support of this request or even a list of the documents to which they refer. The Court therefore will deny this request.

4.  *All 2007 and 2008 Administrative Review Board ("ARB") documents.*

The Government has produced one paragraph from page nine of a ten-page November 2007 ARB report. The paragraph in question was the Recommendation of the ARB, indicating that it credited Mr. Sadkhan and, for veiled reasons, did not credit other detainee testimony concerning the alleged role Mr. Sadkhan played overseas. Counsel for Mr. Sadkhan ask for a copy of the entire report, asserting that "[i]n a federal forum, a party is not allowed to pick and choose portions of a document that it deems worthy of disclosure." Pet'r's Mem. at 7. The Government responds that "[i]t is dubious whether an officer's or an ARB's *opinion* is relevant whatsoever." Resp'ts' Opp'n at 12.

Given the conclusion of the 2007 ARB, and the reasons for it, as well as the nature of the evidence contained in the Amended Factual Return ("the Factual Return"), the Court finds that the entire ARB Report from the 2007 ARB must be produced. The nature of the factual evidence relied upon by the ARB and its reasons for discrediting those who gave information against Mr. Sadkhan will help to exculpate him. Because the document has been produced, in heavily redacted form, in the FOIA litigation, its full production now should not be unduly burdensome.[2]

---

[2] In making this statement, the Court does not overlook the differences between review for FOIA production and review for production in this context. Every line of every classified document

Mr. Sadkhan has informed his lawyers that he had an ARB in late 2008 as well and they ask for that report. The Government responds, "while Petitioner may have had some sort of hearing in 2008, there is no indication that he had an ARB." Resp't's Opp'n at 12 n.4. This response is insufficient. Either Mr. Sadkhan had a 2008 ARB or he did not. The only ones who can find that out with certainty are Government counsel. The Court will direct the Government to acquire precise information on this point.

Finally, Petitioner's counsel ask for "all documents considered by the ARB in reaching its recommendations." Pet'r Mem. at 8. This request is over-broad and not narrowly tailored as required by Section I.E.2.[3] Counsel for Mr. Sadkhan suggest that there might be exculpatory information in the documentation, given the 2007 ARB's conclusions, but that is much too speculative to meet the standards of the CMO.

5.   *Any and all statements made by Guantanamo detainees who have implicated Mr. Sadkhan that contain contradictory statements or indicate a lack of credibility, any polygraph examinations that have been administered to such detainees, and any and all other reports, ARBs and CSRTs[4] that call into question the credibility or reliability of these men.*

A discovery request that starts with "any and all" is almost certainly in trouble under the CMO and this one is no exception. The Government has identified nine detainees who allegedly provided information about Mr. Sadkhan's activities. The Factual Return and subsequent productions

---

must be reviewed and a determination made concerning its classification level; this often requires review by multiple agencies; and each agency has only so many classification experts who can perform this work. The point made is that the document is identified, so no search is required.

[3] Disclosure of these documents considered by the ARB in reaching its recommendations is not mandated by Section I.D.1.

[4] A CSRT is a Combatant Status Review Tribunal.

of documents contain numerous recantations and credibility issues concerning these people. Depending on how long any one of them has been at Guantanamo, there may be hundreds of interviews with each, to say nothing of the difficulty of identifying "any and all other reports, ARBs and CSRTs" that questioned their reliability. Pet'r's Mem. at 9. The burden on the Government from this request could be enormous.   When weighed against the *possibility* of finding additional discrediting information about the nine detainees, most especially given what is already in the record and provided by the Government, the enormous burden becomes staggering.   Since, however, these nine detainees formulate the basis for the Government's allegations, the Court will order counsel for the United States in this case to inquire of all Government counsel doing work involving Guantanamo detainees if they have any records that concern detainees with ISN numbers ███████████

████████ and ███ and that indicate a lack of credibility in one or more of them (in addition to what has been produced already).

> 6.   *Any and all records and documents which state, imply, suggest, or in any manner indicate that ISN███ was alleged to be or was the ████████████*
> ████████████████

Again, Mr. Sadkhan's counsel have imported broad discovery-type language that does not fit the circumstance or the CMO.   The Government has presented the evidence on which it intends to rely to support its allegations.   It does not need to search for more evidence in support of its case.

> 7.   *Any and all records pertaining to the circumstances of Mr. Sadkhan's capture, including information concerning bounties.*

Counsel for Mr. Sadkhan do not really want – or need – any and all records pertaining to the circumstances of Mr. Sadkhan's capture.   What they want, and may find helpful, is whether

-7-

Mr. Sadkhan was turned over to the United States in return for a bounty. *See* Pet'r's Mem. at 14 (Mr. Sadkhan "asserts that he was sold to the United States for a bounty. . . . Such information would materially undermine Respondents' allegations . . . and is clearly exculpatory."). The United States must inform Mr. Sadkhan's counsel, by producing records or otherwise, of a single fact: was someone paid or otherwise compensated for turning over Mr. Sadkhan or not?

> 8.   *The recommendation of MG Geoffrey Miller that Mr. Sadkhan be released from Guantanamo and any and all materials reviewed or relied upon by Colonel MP Brittan P. Mallow and MG Geoffrey Miller in recommending his release.*

According to counsel:

> Both Colonel MP Brittan P. Mallow, then the Commander of the United States Department of Defense Criminal Investigation Task Force, and MG Geoffrey Miller, then the Commander of JTF-GITMO, reviewed [Mr. Sadkhan's] file and recommended [his] release in 2003 or 2004. Respondents produced the recommendation of Colonel Mallow in the Amended Factual Return. The recommendation of MG Miller, however, has not been produced and is simply referenced in one exhibit of the Amended Factual Return.

Pet'r's Mem. at 15.   Petitioner's counsel request production of MG Miller's actual report recommending the release of Mr. Sadkhan. Counsel for Mr. Sadkhan also seek copies of all materials on which either officer relied in making his recommendation. *Id.* The Government objects, mostly to the "any and all" language of the second half of the request.

The recommendation of MG Miller is just as relevant as the recommendation of Colonel Mallow, which has been produced. The Government will be ordered to undertake a reasonable search to locate MG Miller's recommendation and produce it to counsel for Mr. Sadkhan. The request for "any and all" of the underlying documentation is over-broad and will be denied.

**B.     Discovery Requests pursuant to Section I.E.1 and/or I.E.2 of the CMO[5]**

1.     *Any and all statements made by Petitioner, including interrogation memoranda, reports, and notes.*

According to counsel, the references in the Factual Return to Mr. Sadkhan's "consistent statements of innocence over the previous six (6) years prior to these interrogations [in January and February 2008] show that Respondents' reliance on [Mr. Sadkhan's] isolated 'admission' is in fact based on all previous denials of the allegations." Pet'r's Mem. at 17. The Court is unable to make sense of this sentence and does not find that it supports the request for "any and all" statements Mr. Sadkhan has made. The Government "has stated to Petitioner's counsel that they have produced all the statements they intend to rely on," and have produced interrogation memoranda that state "'433 has claimed his innocence for over 6 years and says all allegations against him are false'" and throughout "'his whole time at GTMO, he has never waivered [sic] from his story of innocence.'" Pet'r's Mem. at 17 (internal citation omitted). Mr. Sadkhan's constancy is thus admitted by the Government. Having scores of exhibits that demonstrate the truth of the admission would serve no purpose and would unduly burden the Government and this habeas process.

2.     *All audio and video recordings of statements made by Mr. Sadkhan.*

The Government objects, stating that counsel base this request on "rank speculation" that Mr. Sadkhan's admission that he was a Taliban interrogator was sarcastic or taken out of context. Resp'ts' Opp'n at 19. The Court will not order the Government to produce *all* recordings that might exist of statements by Mr. Sadkhan but it must produce, if such exists, any audio or video

---

[5] Petitioner's counsel also contend that all of Mr. Sadkhan's statements are discoverable under Section I.D.1 of the CMO as well. The Court's rulings in this section address arguments under Sections I.D.1, I.E.1 and I.E.2.

recording of any statement by Mr. Sadkhan admitting that he was a Taliban interrogator.

3. *Information regarding the circumstances surrounding Mr. Sadkhan's alleged statements.*

Counsel for Mr. Sadkhan want to know who questioned Mr. Sadkhan; whether and what type of coercive measures were used; whether and what type of incentives were used; whether it was cold or hot, noisy or quiet, light or dark, and any restraints on Mr. Sadkhan's movements; how he was treated in the 30-day period before any interrogation and whether there was a series of continuous interrogations; and whether he made requests for food, water, sleep or anything else that were denied. Pet'r's Mem. at 20-21.

This request is altogether too broad to be enforced. Counsel say the information relates to the reliability of Mr. Sadkhan's own statements and that Respondents will not be unduly burdened because the information is in their custody and control. However, counsel acknowledge that they already know that during the February 2008 questioning, during which time Mr. Sadkhan allegedly admitted being a Taliban interrogator, the ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███'" Pet'r's Mem. at 20. ███████████████████████

█████████████████████

For the critical event, counsel already have the information they demand. ████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████The interrogation memorandum identifies who was involved in questioning

-10-

Mr. Sadkhan and what incentives were used.

The request amounts to a fishing expedition that is entirely inconsistent with these proceedings and the CMO. The Government need not respond.

### C.     Discovery Requests for Production of Mr. Sadkhan's Medical Records pursuant to Section I.E.2

Other jurists handling Guantanamo cases have, on occasion, ordered the Government to produce medical records for a detainee. Building on these, counsel here ask for copies of Mr. Sadkhan's medical records, as "important to an evaluation of his mental state and [to] provide context for any statements" he made to interrogators. Pet'r's Mem. at 22. It may be that Mr. Sadkhan has had a medical condition that could conceivably affect how he answered questions. It may not be. Counsel provide no basis to know, one way or the other. Without some sort of connection, this request is merely a fishing expedition to which the Government need not respond.

A memorializing order accompanies this Memorandum Opinion.


Date: April 1, 2009                                                 _____/s/_____

                                                                                    ROSEMARY M. COLLYER
                                                                                    United States District Judge